**Leonard KAHN, Plaintiff-Appellant,**
**v.**

**DYNAMICS CORPORATION OF AMERICA, Defendant-Appellee.**

**No. 981, Docket 73–2848.**

United States Court of Appeals, Second Circuit.

Argued May 21, 1974.

Decided Dec. 10, 1974.

As Modified On Denial of Rehearing Jan. 9, 1975.

Certiorari Denied April 21, 1975.

See 95 S.Ct. 1657.

Laurence B. Dodds, Great Neck, N. Y. (Joseph R. McPhee, Jr., and George Pollack, New York City, on the brief), for plaintiff-appellant.

Thomas M. Ferrill, Jr., and Allen V. Hazeltine, Blue Bell, Pa., for defendant-appellee.

Before SMITH and TIMBERS, Circuit Judges, and TYLER, District Judge.*

TYLER, District Judge.

Plaintiff Leonard R. Kahn sued Dynamics Corporation of America ("DCA"), charging that certain models of the "REL" radio receiving systems, made and distributed by DCA, infringed Kahn's patent No. 3,030,503, issued on April 17, 1962 (hereinafter the "503 patent"). He appeals from the trial court's

* United States District Judge for the Southern District of New York, sitting by designation.

denial of his claims and assessment of liability on his part for attorneys' fees. Since we believe there is ample evidence to support the reasoning and judgment of the trial court, we affirm in all respects but remand the case for determination of the exact amount of attorneys' fees to be awarded to defendant.

After the trial, the district court entered judgment on the basis of an opinion holding that the Kahn patent was invalid in view of certain prior art, 35 U.S.C. §§ 102 and 103; holding that the 503 patent was invalid because of Kahn's failure to disclose material facts and because he made material misrepresentations to the Patent Office; determining that claims 15 and 16 of the 503 patent were invalid because they were first asserted in and after August, 1961, more than one year after equipment identical to that charged to infringe had been on sale and distributed to customers; holding that plaintiff had failed to sustain his burden of proving infringement; dismissing the complaint with costs; and determining that, because the case is exceptional within the purview of 35 U.S.C. § 285, defendant is entitled to recover attorneys' fees as part of its costs.

Kahn has asserted that his patent covers all diversity radio receiving systems wherein the outputs of the diversity receiving branches are combined linearly in phase by any circuit which causes the strength of the signal from each branch, at the point where the signals from all branches are combined, to be proportional to the square of the strength of the signal received by the antenna for that branch. The practical core of this patent dispute is that both the 503 patent and the devices manufactured by DCA are intended and designed to overcome the problem known even to laymen as "fading" of radio signals.

As is commonly known, radio signals take many courses in traveling substantial distances from a transmitter to a receiver. While radio signals can, but rarely do, follow the earth's curvature, they usually travel upward away from earth and are refracted back to earth by the ionosphere. Indeed, radio waves may be refracted once, or they may bounce back and forth between the earth and the ionosphere several times before they reach a receiver. Thus, signals intercepted by the receiver system antennae may have traveled over widely different paths of unequal distances.

Radio signals are cyclical in nature; that is, they have crests, or positive phases, and troughs, or negative phases. Therefore, the crest of a portion of a signal traveling on one path may arrive at the same time as the trough of a portion of the same signal traveling on another path. Moreover, the relationship of the phases at the receiver may vary from 0 to 360 degrees, resulting in either a weakening or a strengthening of the signal when the portions are combined. In sum, continuous variations from a full reinforcement (0 degree or 360 degree phase relationship) to complete cancellation (180 degree phase relationship) result in what is called fading.

As the trial court also found, a radio signal does not occupy a single frequency but includes a band or range of frequencies. Each frequency is affected differently by the refractions from the ionosphere to the earth. As a consequence, the various signals within a frequency band may be affected differently so that the relationship among their strengths at the receiver is not the same as it was at the transmitter. This condition produces what is known as selective fading.

Kahn's 503 patent is intended to reduce these fading problems by making use of a diversity reception system for improving signal strength in relation to noise level. By this method, two or more receivers are simultaneously employed to receive signals transmitted over long distances. After linear amplification and demodulation, the signals are combined in phase and in proportion to the squares of the strengths of the incoming signals. Thus, should the incoming signals have relative amplitudes of three to two, they will be combined in

a ratio of nine to four. The subject matter of the 503 patent amounts to a claimed improvement in the field of diversity receiving systems effected by utilizing two or more receivers in combination to overcome the effects of signal fading which may result in a low or virtually negligible signal reception in one or more of the multiple receivers.

The 503 patent was granted to Kahn on April 17, 1962, upon a continuation of Kahn's original application (No. 365,964) which was filed July 3, 1953, but abandoned on December 13, 1960, after continued disallowances by the Patent Office. Accompanying the continuation application was a letter setting forth arguments with respect to the so-called Oswald Patent (No. 2,219,749, issued October 29, 1940). The significance of this letter was that theretofore the Patent Office had consistently concluded that the teaching of the Oswald Patent clearly embraced the Kahn application. Indeed, on June 20, 1961, the continuation application of Kahn was again rejected as being substantially met or anticipated by Oswald. Indefatigable, Kahn and his counsel nevertheless filed an amendment in August, 1961, wherein they contended, *inter alia*, that the system described by Oswald could not work because of random phase variations of the signals to be combined. The last contention appears to have been largely responsible for finally persuading the Patent Office to issue a patent. But at trial Judge Tenney found the contention completely lacking in merit because the Oswald patent describes a system which would satisfactorily solve the random phase variation problem. In other words, the trial court accepted the testimony of defendant's experts which established that, by proceeding on the basis of the Oswald patent, a satisfactory diversity system using ratio square combination could be devised without undue difficulties caused by random phase inconsistency. The system contemplated would operate by reconditioning the reduced amplitude carrier of each receiving branch and by introducing each branch's reconditioned carrier into its second detector.

■ We believe that the testimony at trial amply supports the trial judge's conclusions on the teaching of Oswald and on other prior art in the field. We have little to add to the specific findings and reasoning of the trial court on this and other matters. Nevertheless, some of the evidence at trial and findings of the trial court will be explored to determine whether Kahn misled the Patent Office and proceeded in bad faith in other ways. Such actions would be sufficient to make this an "exceptional case" within the meaning of 35 U.S.C. § 285 and to support the trial judge's exercise of discretion under that statute in awarding attorneys' fees to the defendant.

■ As Judge Tenney recognized, the presumption of validity of a patent may be strengthened where the Patent Office has granted it with knowledge of relevant prior art, here most particularly the Oswald Patent. However, that presumption should not attach where there is evidence that the Patent Office has been misled as to the true import of prior art references. Cf. John Deere Co. v. Graham, 333 F.2d 529, 530 (8th Cir. 1964), aff'd, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). The presumption has also been weakened in recent years by the fact that the Patent Office is too overworked to give adequate attention to patent applications and grants. See Ansul Company v. Uniroyal, Inc., 301 F.Supp. 273, at 280 (S.D.N.Y.1969), aff'd in relevant part, 448 F.2d 872 (2d Cir. 1971), cert. denied, 404 U.S. 1018, 92 S.Ct. 680, 30 L.Ed.2d 666 (1972); cf. Graham v. John Deere Co., 383 U.S. 1, 18, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). Here on the basis of persuasive evidence, the trial court found that Kahn made no new contributions to the art but, at best, reworked and republicized information previously developed by others. Indeed, Judge Tenney found that some of the information Kahn used was obtained

from publicly available works which he had encountered many years ago while working as an engineer for Crosby Laboratories.

■ The record clearly indicates that the Oswald Patent contains a full disclosure of the principle of ratio-squared combining in a diversity system. Moreover, the mode of operation and the circuitry described by the Oswald Patent seem to compare closely to those disclosed by the 503 patent. Not surprisingly, therefore, the trial court was impressed by the testimony of DCA's expert Bingley. He prepared a hypothetical circuit which in reality was the Oswald Patent circuit incorporating the change which Oswald himself had proposed and which was disclosed in the Ohl Patent (No. 2,041,855, issued May 26, 1936). Unfortunately for Kahn, there is no evidence that the patent examiner knew of the Ohl Patent or that it was called to his attention by Kahn. Therefore, the presumption of validity accorded a patent granted in light of prior art is inapplicable. Consequently, we accept, with a minor qualification, the trial court's finding that Kahn's circuit was anticipated by the Oswald Patent with one possible distinction, which distinction nonetheless was anticipated by the Ohl Patent. See 367 F.Supp. 67, at 72. At first blush, this determination seems *contra* the general rule that, upon challenge under Section 102, the challenging party must prove that all elements of the invention, or equivalents thereof, are to be found in a preexisting single structure or description. See, e. g. Scaramucci v. Dresser Industries, 427 F.2d 1309, 1313–1314 (10th Cir. 1970). Particularly since Oswald himself proposed the change later embodied in the Ohl Patent, and because Oswald's patent in itself disclosed the principle of ratio-squared combining in a diversity system with a method of operation similar to the Kahn disclosures, we think the additional reference to Ohl by the trial court was insubstantial and thus unnecessary to establish the Section 102 defense. Shelco, Inc. v.

Dow Chemical Co., 466 F.2d 613, at 614 (7th Cir. 1972). We scarcely need add that our review of the record indicates likewise that any differences which might be perceived between the subject matter of the 503 patent and the prior art are such that "the subject matter as a whole would have been obvious at the time the invention was made to a person" such as an electrical engineer like Kahn. 35 U.S.C. § 103.

■ We also believe that there is ample evidence to support the conclusion of the trial court that claims 15 and 16 of the 503 patent, the only claims as to which Kahn attempted to prove infringement by DCA, are invalid. They were not presented under either the original or the continuation application until more than one year after equipment substantially the same as that charged to infringe had been on sale and delivered to customers. See 35 U.S.C. § 102(b); cf. Muncie Gearworks Inc. v. Outboard Marine & Manufacturing Co., 315 U.S. 759, 62 S.Ct. 865, 86 L.Ed. 1171 (1942).

Finally, the trial court determined that the DCA systems operate quite differently from the system contemplated by the 503 patent. Diversity receiving systems conforming to the specifications of that patent would combine the signals from each branch in proportion to the squares of their strengths as received, regardless of how greatly the relative strengths of the signals differed. DCA's system or systems do not operate this way; in effect, they are hybrid systems. If the signals in the branches differ in strength by less than two to one, they are combined in proportion to a varying power of the input signal strengths. When incoming signals of the branches differ in strength by more than two to one, only the signals from the branches having the stronger input contribute to the output; the weaker signal contributions are switched off. As the trial court put it, defendant's systems are both combining and selective. Not surprisingly, therefore, Judge Tenney deter-

mined that Kahn's expert witness could not explain "any definitively understood relation between the claims in suit and the disclosure in Kahn's specifications and drawings." For this and other reasons supported by the evidence, we conclude that the trial court was correct in holding that DCA's devices do not infringe the Kahn Patent, most particularly claims 15 and 16 thereof.

We come now to the issue of whether DCA is entitled to an award of reasonable attorneys' fees under 35 U.S.C. § 285. In what is perhaps the leading case in this circuit on this subject, the United States District Court for the Southern District of New York enunciated the rule that "only where the court is convinced that the patent in suit is so wholly devoid of substance that the plaintiff could not have had a bona fide belief in its validity shall it award the defendant reasonable attorneys' fees pursuant" to the statute. Indiana General Corp. v. Krystinel Corp., 297 F.Supp. 427, 449 (S.D.N.Y.1969), aff'd, 421 F.2d 1023 (2d Cir.), cert. denied, 398 U.S. 928, 90 S.Ct. 1820, 26 L.Ed.2d 91 (1970). Mention has already been made that the trial court, well aware of this principle, made a finding that Kahn had misled the patent examiner with respect to the true nature, scope and capabilities of the method or system disclosed in the Oswald Patent. In addition, the trial court made a finding that Kahn deceived the Patent Office by withholding from it the nature and significance of highly relevant papers, the contents of which were familiar to Kahn as early as the 1930's when he was working for Crosby Laboratories.

Moreover, while the trial court did not pass upon DCA's asserted defense of laches, it did note that in September, 1962, less than six months after his patent had issued, Kahn charged by letter that DCA might be infringing the 503 patent. As a result, DCA's lawyers studied the 503 patent and, in apparent good faith, replied to Kahn's attorneys in November, 1963, that it would seem

clear that there was no possible infringement by the devices put out by the REL division of DCA. Apparently, there then followed a considerable period in which there was no communication between the parties and no further charges of infringement on behalf of Kahn. The record indicates, however, that in 1969 defendant had written Kahn's attorneys explaining in greater detail why the REL devices did not infringe the 503 patent. Surprisingly, ten days after that letter, this suit was instituted. However, for the three year period thereafter until trial was reached, plaintiff and his attorneys made absolutely no attempt, through discovery or otherwise, to test and consider the contentions of DCA that there was no infringement.

On the basis of these findings, the trial court inferred that Kahn's purpose in commencing this litigation was to force DCA to obtain a non-exclusive license under the 503 patent by threatening DCA with a suit, the defense of which would entail considerable expenses. Additionally, examination of the discovery materials in the case and of the performance of the plaintiff and his witnesses at trial fortified the trial court's conclusion that Kahn and his lawyers made no meaningful effort to establish just how the REL devices infringed the 503 patent. The trial court also analyzed the specific preparations and arguments of DCA, in particular those used in its pretrial efforts to persuade Kahn that his claims were lacking in merit. It finally concluded that Kahn failed to use reasonable and responsible care in assessing his claims prior to and during suit and that this suit was commenced and prosecuted in bad faith on the part of plaintiff. Therefore, the trial judge determined that the case was exceptional and justified the award of both costs and attorneys' fees to the defendant. See Kaehni v. Diffraction Co., Inc., 342 F.Supp. 523, 535 (D.Md.1972), aff'd without op., 473 F.2d 908 (4th Cir.), cert. denied, 414 U.S. 854, 94 S.Ct. 151, 38 L.Ed.2d 103 (1973).

In patent suits, no less than other types of suits in the federal courts, it is the general rule that awarding attorneys' fees to the prevailing party is not favored absent a specific statute providing therefor. Here we have such a statute, but the relief it provides is not usually granted. The patent suit involved must qualify as an "exceptional" case. It is obvious from the language of 35 U.S.C. § 285 that Congress intended the trial court to exercise its sound discretion in deciding whether a case was sufficiently exceptional to vitiate the normal rule that each party bear his own attorneys' fees.

Fraud on the Patent Office would certainly be enough to make a case exceptional, "[b]ut conduct short of fraud and in excess of simple negligence is also an adequate foundation for deciding that a patent action is exceptional." Monolith Portland Midwest Co. v. Kaiser Aluminum and Chemical Corp., 407 F.2d 288, 294 (9th Cir. 1969). The trial court's findings that plaintiff was dilatory, that he had misled the Patent Office, and that he had failed or refused to meet the specific reasoning and arguments of DCA concerning the infringement issue were more than ample to support a finding of conduct "in excess of simple negligence" and a determination of bad faith on the part of plaintiff in commencing and litigating this suit. We agree with the trial judge that such negligence and bad faith are sufficient to justify classifying the case as exceptional and awarding attorneys' fees to the defendant. We find no errors in the trial court's determinations and no abuse of discretion in its award.

In conclusion, we note that the record does not indicate that the trial court has fixed the exact amount of the attorneys' fees to be awarded to DCA. Hence, we affirm the judgment and order appealed from in all respects but remand the case to the trial court for determination of this amount. Costs of this appeal are awarded to defendant.