**ADVANCED CARDIOVASCULAR SYSTEMS, INC., Plaintiff/Cross–Complaint Defendant/Appellee,**

v.

**SCIMED LIFE SYSTEMS, INC., Defendant,**

and

**Robert L. Hess, Cross–Complainant/Appellant.**

No. 92–1157.

United States Court of Appeals, Federal Circuit.

March 9, 1993.

Rehearing Denied; Suggestion for Rehearing In Banc Declined May 13, 1993.

---

**30.** The example provided in the regulations to section 638, indicating section 638 is to apply to insurance activity, cannot override the regulations to section 953.

**31.** Having determined for the reasons given above that the premiums paid by plaintiff were not for insurance of United States risks, the court need not address the other issues raised by plaintiff, including the role of the Outer Continental Shelf Lands Act, 43 U.S.C. §§ 1331–1343 (1970) (originally enacted in 1953). It is noted that, to the extent possible, tax questions should be resolved within the Internal Revenue Code itself, without reference to other statutes.

lee. With him on the brief were Craig B. Bailey and Stephen J. Strauss.

Keith V. Rockey, Rockey & Rifkin, Chicago, IL, argued, for cross-complainant/appellant. With him on the brief was Kathleen A. Lyons. Also on the brief was Michael R. Cunningham, Gray, Plant, Mooty, Mooty & Bennett, Minneapolis, MN.

Before NEWMAN, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and MICHEL, Circuit Judge.

PAULINE NEWMAN, Circuit Judge.

Robert L. Hess appeals the judgment of the United States District Court for the District of Minnesota,[1] entered upon motion made under Rule 12(b)(6) of the Federal Rules of Civil Procedure, dismissing his cross-complaint with prejudice, on the ground of laches. We vacate the dismissal.

## BACKGROUND

The underlying litigation between Advanced Cardiovascular Systems ("ACS") and SciMed Life Systems ("SciMed"), relating to a patented balloon dilation catheter for use in the treatment of cardiovascular disease, began on March 27, 1987. ACS sued SciMed for infringement of United States Patent No. 4,323,071 ("the '071 patent"), issue date April 6, 1982, inventors John B. Simpson and Edward W. Robert. SciMed moved for summary judgment of non-infringement, and on September 30, 1988 the district court granted the motion. On appeal the Federal Circuit held that summary adjudication was inappropriate in view of disputed material facts relevant to claim construction, and remanded the case for trial. *Advanced Cardiovascular Systems, Inc. v. SciMed Life Systems, Inc.,* 887 F.2d 1070, 12 USPQ2d 1539 (Fed.Cir. 1989).

During the course of discovery SciMed had learned of and contacted Robert L. Hess, an engineer, who stated, in outline, that he assisted the named inventors, Dr. Simpson and Dr. Robert, both physicians,

---

Richard A. Bardin, Fulwider, Patton, Lee & Utecht, Los Angeles, CA, argued, for plaintiff/cross-complaint defendant/appel-

1. *Advanced Cardiovascular Systems, Inc. v. SciMed Systems, Inc.,* No. 4–87–733, 1991 WL 135477 (D.Minn. December 30, 1991).

by providing ideas and expertise on the structure and materials of construction of the catheter. Drs. Simpson and Robert had applied for a patent on the catheter without informing Mr. Hess, who stated that he did not know of the existence of the '071 patent and the fact that he was not named as a co-inventor until he was contacted by SciMed in December 1987. SciMed raised the defense of patent invalidity in the ACS/SciMed litigation, based on Mr. Hess' statements about inventorship.

In August 1990 Mr. Hess moved to intervene as a cross-complainant in the ACS/SciMed action, which had not yet been tried. He sought a declaration that he was a joint inventor of the invention claimed in the '071 patent, and corresponding correction of the patent document. The motion to intervene was granted in December 1990. On ACS' motion under Fed.R.Civ.P. 12(b)(6), in May 1991 the district court dismissed Mr. Hess' cross-complaint for failure to state a claim upon which relief can be granted.[2]

The district court observed that the '071 patent issued in 1982, and that Mr. Hess first acted to establish his legal rights when he moved to intervene in August 1990. Drawing an analogy to the six year limit to recovery of damages for past infringement, 35 U.S.C. § 286, and the six year statute of limitations applying to conversion of personal property under Minnesota law, the district court held that Mr. Hess' delay for more than eight years after patent issuance was unreasonable. The court found that ACS was prejudiced by the delay because Mr. Hess' intervention was made on the eve of the trial between ACS and SciMed, and would have delayed resolution of that case. The court dismissed Mr. Hess' claim with prejudice, on the ground of laches.

ACS and SciMed settled their lawsuit on December 27, 1991. Final judgment on Mr. Hess' claim was entered on December 30, 1991, and this appeal followed.

## FED.R.CIV.P. 12(b)(6)

 Rule 12(b)(6) authorizes the defendant to move, before filing a responsive pleading, for dismissal of the complaint. A motion made under Rule 12(b)(6) challenges the legal theory of the complaint, not the sufficiency of any evidence that might be adduced. The purpose of the rule is to allow the court to eliminate actions that are fatally flawed in their legal premises and destined to fail, and thus to spare litigants the burdens of unnecessary pretrial and trial activity. *Neitzke v. Williams*, 490 U.S. 319, 326–27, 109 S.Ct. 1827, 1832, 104 L.Ed.2d 338 (1989). Such a motion, which cuts off a claimant at the threshold, must be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). *See also Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

 Whether a complaint states a claim upon which relief can be granted is a determination of law, and receives *de novo* appellate review; no deference is owed to the holding of the trial court. *See Eades v. Thompson*, 823 F.2d 1055, 1060 (7th Cir. 1987). A dismissal under Rule 12(b)(6), to be sustained, must be correct as a matter of law when the allegations of the complaint are taken as true. *Air Products and Chemicals, Inc. v. Reichhold Chemicals, Inc.*, 755 F.2d 1559, 1562 n. 4, 225 USPQ 121, 123 n. 4 (Fed.Cir.), *cert. dismissed*, 473 U.S. 929, 106 S.Ct. 22, 87

---

2. **Rule 12(b)**
Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion:

... (6) failure to state a claim upon which relief can be granted....
A motion making any of these defenses shall be made before pleading if a further pleading is permitted....

L.Ed.2d 700 (1985). Disputed issues are construed favorably to the complainant, *United States v. Mississippi*, 380 U.S. 128, 143, 85 S.Ct. 808, 816, 13 L.Ed.2d 717 (1965), and all reasonable inferences are drawn in favor of the complainant. Thus, to the extent that factual questions are raised and are material to the result, dismissal is improper unless there is no reasonable view of the facts which could support the claim.

The issue is whether Mr. Hess' claim was correctly barred on the ground of laches, within the constraints of Rule 12(b)(6).

## LACHES

▮ Dismissal of a claim on the ground of laches requires that there be (1) unreasonable and unexcused delay in bringing the claim, and (2) material prejudice to the defendant as a result of the delay. *A.C. Aukerman Co. v. R.L. Chaides Construction Co.*, 960 F.2d 1020, 1028, 22 USPQ2d 1321, 1324 (Fed.Cir.1992) (*en banc*). Both of these factual premises must be met, predicate to the weighing of the facts of delay and prejudice to determine whether justice requires that the claim be barred. The mere passage of time does not constitute laches. When a limitation on the period for bringing suit has been set by statute, laches will generally not be invoked to shorten the statutory period. *Cornetta v. United States*, 851 F.2d 1372, 1377–78 (Fed.Cir.1988) (*en banc*). The burden of proof is on the party that raises the affirmative defense. Although the burden of coming forward with exculpatory evidence may shift to the claimant, as explained in *Aukerman*, the ultimate burden of proof does not change.

The strictures of Rule 12(b)(6), wherein dismissal of the claim is based solely on the complainant's pleading, are not readily applicable to a determination of laches. Although a Rule 12(b)(6) motion may be grounded on an affirmative defense, the defense of laches usually requires factual development beyond the content of the complaint. The facts evidencing unreasonableness of the delay, lack of excuse, and material prejudice to the defendant, are

seldom set forth in the complaint, and at this stage of the proceedings can not be decided against the complainant based solely on presumptions. In the words of the Eighth Circuit:

> So far as laches is concerned, it has been repeatedly held that mere lapse of time does not constitute laches. "It is to be determined by consideration of justice, and that is dependent upon the circumstances of each particular case." *Des Moines Terminal Co. v. Des Moines Union Ry. Co.*, 8 Cir., 52 F.2d 616, 630 [1931]. In order to determine whether the plaintiff's claim was barred by laches, we would have to know more than is disclosed by her amended complaint.

*Leimer v. State Mutual Life Assurance Co.*, 108 F.2d 302, 305 (8th Cir.1940) (other citations omitted).

The district court held that Mr. Hess' claim was barred by laches, on the following premises and presumptions:

### A. The Period of Delay

The district court measured Mr. Hess' delay in bringing suit from the issuance of the '071 Patent in 1982, until he sought to intervene in the ACS/SciMed suit in 1990. The court held that the date of patent issuance started the period by which laches is measured, whether or not Mr. Hess knew of the issuance.

▮ When applying the equitable doctrine of laches in order to bar a claim, the period of delay is measured from when the claimant had actual notice of the claim or would have reasonably been expected to inquire about the subject matter. We draw analogy to suit for patent infringement, wherein the period of delay is measured from the time when the patent owner knew or should have known of the infringement. *Aukerman*, 960 F.2d at 1032, 22 USPQ2d at 1328. The district court did not apply these criteria, but referred to *Sontag Chain Stores Co. v. National Nut Co.*, 310 U.S. 281, 295, 60 S.Ct. 961, 967, 84 L.Ed. 1204 (1940), wherein the Court stated that upon issuance of a patent and its recordation in the Patent Office "constructive notice of [its] existence goes thus to all the

world". However, *Sontag Chain Stores* did not relate to laches. In *Sontag* constructive notice was invoked so that the accused infringer, who did not have actual knowledge of either the existence of the patent or its reissue by the patentee, could nonetheless be presumed to have that knowledge in order to obtain the benefit of the defense of intervening rights. *Sontag Chain Stores* harbors no principles applicable to laches. Constructive notice is not an appropriate substitute for the determination of reasonableness or excuse for delay.

Although the patent law contains some provisions involving constructive notice (*e.g.,* the patent marking provision and the provision for recordation of patent assignments), to establish laches against an unnamed inventor the period of delay can not start while the potential claimant remains ignorant that a cause of action has arisen. The Supreme Court described the requirement of actual knowledge of the existence of the asserted right:

> [Laches] is an equitable defense, controlled by equitable considerations, and the lapse of time must be so great, and the relations of the defendant to the rights such, that it would be inequitable to permit the plaintiff to now assert them. There must, of course, have been knowledge on the part of the plaintiff of the existence of the rights, for there can be no laches in failing to assert rights of which a party is wholly ignorant, and whose existence he had no reason to apprehend.

*Halstead v. Grinnan,* 152 U.S. 412, 417, 14 S.Ct. 641, 643, 38 L.Ed. 495 (1894). Absent actual knowledge, the facts must support a duty of inquiry:

> [T]he law is well settled that, where the question of laches is in issue, the plaintiff is chargeable with such knowledge as he might have obtained upon inquiry, provided the facts already known by him were such as to put upon a man of ordinary intelligence the duty of inquiry.

*Johnston v. Standard Mining Co.,* 148 U.S. 360, 370, 13 S.Ct. 585, 589, 37 L.Ed. 480 (1893).

This knew-or-should-have-known criterion is appropriate to actions to correct inventorship. It is in harmony with the patent statute, for in accordance with 35 U.S.C. § 256 [3] inventorship may be corrected at any time, whether by direct application to the commissioner or by the court. Since the defense of patent invalidity based on incorrect inventorship can be raised at any time, correction of inventorship should be similarly available at any time. Were laches measured constructively from the date of patent issuance, an erroneously omitted inventor could be barred from remedy before he or she learned of the existence of the patent. Such a stricture, although perhaps conducive to repose in patent litigation, does not accord with either § 256 or the practice that allows challenges to patent validity throughout the patent life.

We conclude that the district court erred, as a matter of law, in measuring Mr. Hess' delay from the date of issuance of the patent, in the absence of proof that Mr. Hess knew or should have known that the patent had issued and that he was omitted as a joint inventor. Mr. Hess stated in his motion to intervene that after he helped to develop the catheter he "was not further involved in any of the catheter work that followed" and did not know that a patent had been obtained. The reasonableness of the behavior of the person against whom laches is asserted depends on the facts of the particular case. Whether and when

---

**3. § 256. Correction of named inventor**

Whenever through error a person is named in an issued patent as the inventor, or through error an inventor is not named in an issued patent and such error rose without any deceptive intention on his part, the Commissioner may, on application of all the parties and assignees, with proof of the facts and such other requirements as may be imposed, issue a certificate correcting such error.

The error of omitting inventors or naming persons who are not inventors shall not invalidate the patent in which such error occurred if it can be corrected as provided in this section. The court before which such matter is called in question may order correction of the patent on notice and hearing of all parties concerned and the Commissioner shall issue a certificate accordingly.

Mr. Hess had information sufficient to place upon him a duty of inquiry is a material question of fact, and upon motion to dismiss under Rule 12(b)(6) all reasonable factual inferences must be drawn in favor of Mr. Hess. The question of unreasonable and unexcused delay could not have been determined adversely to Mr. Hess under Rule 12(b)(6) for, accepting his allegations as true, his pleading does not establish an unreasonable delay from the time he had actual notice of the issuance of the '071 patent.

### B. Analogy to Statutory Limitations Periods

The district court also noted that a delay of more than six years was presumptively unreasonable, based on analogy to other statutes. The court found such statutes "persuasive legislative expressions of unreasonable delay."

When a federal statute does not set a period of limitation to suit, courts have looked to "analogous" federal and state statutes to determine whether there should be such a limitation, and its term. *Del Costello v. International Brotherhood of Teamsters*, 462 U.S. 151, 158, 103 S.Ct. 2281, 2287, 76 L.Ed.2d 476 (1983). In this case the district court looked to 35 U.S.C. § 286, which limits to six years the period for which a patentee may receive pre-suit damages from an infringer, and to the Minnesota six-year statute of limitations for actions arising from the conversion of personal property. By analogy the district court concluded that Mr. Hess' delay of eight years after patent issuance was unreasonable.

Although equity will not support a claimant who sleeps on his/her rights unreasonably and prejudicially, the analogous fixed period of limitations does not bar Mr. Hess' inventorship action. In *Aukerman* this court confirmed that six years after a patentee knew or should have known of the infringement, there arose a presumption of laches. However, unlike a statutory period of limitation on suit, the presumption of laches is rebuttable. The presumption serves to place upon the patentee the bur-

den of coming forward with evidence that the delay is reasonable or excusable, see Rule 301 of the Federal Rules of Evidence, while the ultimate burden of proving laches remains on the party raising the defense. *Aukerman*, 960 F.2d at 1035, 22 USPQ2d at 1331.

We hold that this rule is equally applicable to the determination of laches in challenges to inventorship. Thus a delay of more than six years after the omitted inventor knew or should have known of the issuance of the patent will produce a rebuttable presumption of laches. However, a presumption will not support judgment on the pleading under Rule 12(b)(6). As discussed in Part *A*, Mr. Hess' pleading did not show unreasonable and inexcusable delay after he had actual knowledge of the '071 patent. The delay element of laches was not established for purposes of Rule 12(b)(6).

### C. The Prejudice Element

The district court found litigation prejudice as the prejudice element of laches, stating that "A belated inventorship contest would only serve to delay this Court's consideration of the central issues which have been pending for over four years".

Although the principles of equity ignore no form of prejudice, the prejudice element of laches is not established solely because the raising of the claim would delay other litigation. Justice requires that an issue in legitimate dispute not be held forfeited (the district court dismissed Mr. Hess' complaint with prejudice) merely because it would complicate other pending litigation. As the Supreme Court observed a century ago, "forfeitures are never favored. Equity always leans against them, and only decrees in their favor when there is full, clear and strict proof of a legal right thereto." *Henderson v. Carbondale Coal and Coke Co.*, 140 U.S. 25, 33, 11 S.Ct. 691, 694, 35 L.Ed. 332 (1891).

There was no suggestion that Mr. Hess engaged in a tactical manipulation of legal process in seeking intervention in the ACS/SciMed litigation or in the timing of

his intervention. It was SciMed, not Hess, who first raised the issue of Hess' co-inventorship; Hess' intervention appears to have been brought in order to secure a personal remedy, the factual premises of which were already before the court. In all events, to the extent that Mr. Hess' intervention would have delayed resolution of the litigation between ACS and SciMed, a less extreme remedy than dismissal with prejudice could have been employed. For example, Hess' claim could have been separated pursuant to Fed.R.Civ.P. 42(b).[4]

Therefore, we can not sustain the district court's conclusion that the prejudice element of laches was shown. Since the defense of laches requires both unreasonable delay and prejudice, and since neither was established on the pleading, Mr. Hess' complaint was improvidently dismissed under Rule 12(b)(6).

## SUMMARY JUDGMENT

■■■ Rule 12(b)(6) provides that if matters outside the complainant's pleading are presented to the court the motion shall be treated as one for summary judgment under Rule 56.[5]

Although not identified or discussed by the district court, the parties appear to agree that matters outside the pleading were considered by the court. Mr. Hess states that if the court decided the motion as if on summary judgment, the court improperly resolved disputed material facts adversely to him. ACS responds that Mr. Hess knew from the content of the Rule 12(b)(6) motion the grounds upon which his claim was challenged, and that it is immaterial whether the motion were treated as a motion to dismiss for failure to state a claim or as a motion for summary judgment. That is not correct. A movant's

challenge to the sufficiency of the complaint as a matter of law, brought under Rule 12(b)(6), is not sufficient notice that the non-movant must respond as if to a motion for summary judgment, and place material facts in dispute.

■■■ Rule 56, as recently interpreted, places a substantial burden upon the non-movant to place in dispute the material facts of the case. In *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the Court warned that "Rule 56(e) therefore requires the non-moving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial'". *Id.* at 324, 106 S.Ct. at 2553 quoting Fed.R.Civ.P. 56(c). In contrast, on motion to dismiss on the complainant's pleading it is improper for the court to decide the case on facts not pleaded by the complainant, unless the complainant had notice thereof and the opportunity to proceed in accordance with the rules of summary judgment. *Inland Container Corp. v. Continental Insurance Co.*, 726 F.2d 400, 401 (8th Cir.1984); *Woods v. Dugan*, 660 F.2d 379 (8th Cir.1981).

■■■ In such event, the rules governing summary judgment must apply. In this case there was a clear dispute as to the factual questions material to laches. When these material facts are resolved in Mr. Hess' favor, laches is not established as a matter of law. At the least, Mr. Hess was entitled to the opportunity to show that there was sufficient evidence to raise genuine issues of material fact. Thus the district court's ruling on the motion made

---

**4. Rule 42(b) Separate Trials**

The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, ... or third-party claim, ... always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by statute of the United States.

**5. Rule 12(b)**

... If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

under Rule 12(b)(6) can not stand, even if viewed as a motion for summary judgment.

## CONCLUSION

The dismissal of Mr. Hess' cross-complaint on the ground of laches is vacated. The case is remanded for further proceedings.

Taxable costs in favor of Mr. Hess.

VACATED AND REMANDED.