ENCOMP INC., Plaintiff,

v.

L–COM, INC., Defendant.

No. 3:96CV2191(PCD).

United States District Court, D. Connecticut.

March 30, 1998.

Joseph Levinson, Mark P. Stone, Stamford, CT, for Plaintiff.

Theodore Naccarella, Synnestvedt & Lechner, Philadelphia, PA, for Defendant.

*RULING ON DEFENDANT'S MOTION
FOR ATTORNEY'S FEES UNDER
35 U.S.C. § 285*

DORSEY, District Judge.

Defendant L-com, Inc. seeks attorney's fees under 35 U.S.C. § 285 after a voluntary dismissal with prejudice of plaintiff's suit for patent infringement. For the following reasons, the motion is **granted.**

I. BACKGROUND

Plaintiff sued defendant in October 1996 for patent infringement alleging infringement of U.S. Patent No. 4, 588,172 ("the '172 patent") by defendant's WPR, WCX and OMNI

series of products. The patent covers recessed wall plates for coaxial cable connectors.

Defendant's counsel presented Plaintiff with U.S. Patent No. 4,489,419 at a deposition on June 2, 1997. Plaintiff, claiming no prior knowledge of the patent, investigated it and determined that it raised questions about whether it constituted statutory prior art affecting the validity of its patent. Plaintiff voluntarily dismissed its suit with prejudice by motion on June 19, 1997. Defendant's counterclaim seeking a declaratory judgment for patent invalidity, unenforceability and noninfringement under 28 U.S.C. §§ 2201 and 1338(a) and attorney's fees under the "exceptional case" provisions of 35 U.S.C. § 285, was also dismissed with prejudice and absent objection from defendant.

## II. ANALYSIS

### A. Standard of Review

35 U.S.C. § 285 provides for reasonable attorney's fees to the prevailing party in "exceptional" patent infringement actions.[1] The award of attorney's fees under § 285 is discretionary. *Cambridge Products, Ltd. v. Penn Nutrients, Inc.*, 962 F.2d 1048, 1050 (Fed.Cir.1992). The movant must demonstrate the exceptional nature of the case by clear and convincing evidence viewed in light of the totality of the circumstances. *Eltech Systems Corp. v. PPG Industries, Inc.*, 903 F.2d 805, 811 (Fed.Cir.1990); *Carroll Touch, Inc., v. Electro Mechanical Systems, Inc.*, 15 F.3d 1573, 1579 (C.A.Fed. (Ill.) 1993).

In cases of awards to prevailing accused infringers, exceptional cases are typically those of bad faith litigation or those involving fraud or inequitable conduct by the patentee in procuring the patent. *Id.* at 1051 (citing *Standard Oil Co. v. American Cyan-*

amid Co., 774 F.2d 448, 455 (Fed.Cir.1985)). The prevailing accused infringer has the burden of establishing that the patentee pursued the litigation in bad faith. *Id.* Examples of exceptional cases brought in bad faith include misconduct during litigation, vexatious or unjustified litigation, or a frivolous suit. *Standard Oil*, 774 F.2d at 455. "A frivolous suit is one in which the patentee knew or, on reasonable investigation, should have known, was baseless." *Haynes International, Inc. v. Jessop Steel Co.*, 8 F.3d 1573 (Fed.Cir. 1993). "Fraud on the Patent Office would certainly be enough to make a case exceptional, '[b]ut conduct short of fraud and in excess of simple negligence is also an adequate foundation for deciding that a patent action is exceptional.'" *Kahn v. Dynamics Corp. of America*, 508 F.2d 939, 945 (2d Cir.1974), *cert. denied*, 421 U.S. 930, 95 S.Ct. 1657, 44 L.Ed.2d 88 (1975) (quoting *Monolith Portland Midwest Co. v. Kaiser Aluminum and Chemical Corp.*, 407 F.2d 288, 294 (9th Cir.1969)).

### B. Laches and Equitable Estoppel Defenses

Defendant points to its defenses of laches and equitable estoppel to show that plaintiff should have known its patent infringement suit was frivolous enough to make it exceptional under Section 285.

Plaintiff only submitted a cursory response to the merits of defendant's motion, citing no case law and simply asserting that the litigation was pursued in good faith and that it withdrew its case as soon as it found out about the prior art jeopardizing the validity of its patent. Plaintiff's procedural arguments, also citing no case law, are meritless for the reasons stated in defendant's replies.

1. Though neither party raised the issue, defendants who have obtained a voluntary dismissal with prejudice are considered prevailing parties in patent infringement actions if there is a determination that the action was brought in bad faith under Section 285. *See Bioxy, Inc. v. Birko Corp.*, 935 F.Supp. 737, 744 (E.D.N.C.1996); *Gilbreth Intern. Corp. v. Lionel Leisure, Inc.*, 587 F.Supp. 605, 614–15 (1983). *Cf. McGill v. Secretary of Health and Human Services*, 712 F.2d 28, 30–31 (2d Cir.1983) ("Congress intended that

'the interpretation of the term [prevailing party] * * * be consistent with the law that has developed under existing [fee-shifting] statutes', and that a party need not necessarily litigate a case to final judgment to be 'prevailing' within the meaning of the act: ... A party may be deemed prevailing if he obtains a favorable settlement of his case, ..., if the plaintiff has sought a voluntary dismissal of a groundless complaint... " (internal citations omitted)).

To establish laches, defendant must show (i) that there was unreasonable and unexcused delay in plaintiff's bringing of the claim, and (ii) material prejudice to the defendant as a result of the delay. *Advanced Cardiovascular v. Scimed Life*, 988 F.2d 1157, 1161 (Fed.Cir.1993)(citing *A.C. Aukerman Co. v. R.L. Chaides Construction Co.*, 960 F.2d 1020, 1028 (Fed.Cir.1992)). The mere passage of time does not amount to laches. When a limitation on the period for bringing a suit has been set by statute, as in patent infringement actions, laches will generally not be invoked to shorten the statutory period. *Cornetta v. United States*, 851 F.2d 1372, 1377–78 (Fed.Cir.1988) (*en banc*). The burden of proof is on the party that raises the affirmative defense. *Advanced Cardiovascular*, 988 F.2d at 1161.

When applying laches in order to bar a patent infringement claim, the period of delay is measured from the time when the patent owner knew or should have known of the infringement. *Advanced Cardiovascular*, 988 F.2d at 1161. There is no fixed time period that is considered unreasonable under laches, but depends on the individual circumstances of the case. *A.C. Aukerman*, 960 F.2d at 1032. A presumption of laches arises where a patentee delays in bringing suit for more than six years after the date the patentee knew or should have known of the alleged infringer's activity. *Id.* at 1028. A finding of laches bars recovery of damages for any past infringement, but does not bar injunctive relief. *Id.* at 1037.

In regards to equitable estoppel against a patent infringement claim, the *Aukerman* court held that:

1. Equitable estoppel is cognizable under 35 U.S.C. § 282 as an equitable defense to a claim for patent infringement.

2. Where an alleged infringer establishes the defense of equitable estoppel, the patentee's claim may be entirely barred.

3. Three elements must be established to bar a patentee's suit by reason of equitable estoppel:

   a. The patentee, through misleading conduct, leads the alleged infringer to reasonably infer that the patentee does not intend to enforce its patent against the alleged infringer. "Conduct" may include specific statements, action, inaction, or silence where there was an obligation to speak.

   b. The alleged infringer relies on that conduct.

   c. Due to its reliance, the alleged infringer will be materially prejudiced if the patentee is allowed to proceed with its claim.

4. No presumption is applicable to the defense of equitable estoppel.

*Id.* at 1028. Unlike laches, equitable estoppel does not require the passage of an unreasonable time period in filing suit, though delay in filing suit may be relevant to proving whether the patentee's conduct is misleading. *Id.* at 1041–42. The most common case of equitable estoppel arises when the patentee specifically objects to the allegedly infringing activities and then fails to follow up for years. *Id.* To prove the second element, reliance, the alleged infringer must demonstrate that, in fact, it substantially relied on the misleading conduct of the patentee in relation to taking some action. *Id.* at 1042–43.

Material prejudice under both of these doctrines may be economic or evidentiary. *Id.* Evidentiary prejudice may be found where a defendant's ability to fully and fairly defend his case has been jeopardized by the passage of time, such as through the death of witnesses, the loss of records or the unreliability of memories of long past events. *Id.* at 1033. Economic prejudice can arise where a defendant will suffer the loss of monetary investments or incur damages which probably would have been prevented by earlier suit. These damages and monetary losses are not merely those attributable to a finding of liability for infringement, rather, a court must look for a change in the economic position of the alleged infringer during the period of delay. This however, does not mean that a patentee may intentionally lie silently in wait watching damages escalate. *Id.*

Additionally, a court may consider and weigh any justification plaintiff can present for its delay. *Id.* A patentee can

overcome a laches defense if the alleged infringer has "engaged in particularly egregious conduct which would change the equities significantly in plaintiff's favor." *Id.* (internal citation omitted).

"Where there has been contact or a relationship between the parties during the delay period which may give rise to an inference that the plaintiff has abandoned its claim against the defendant, the facts may lend themselves to analysis under principles of equitable estoppel, as well as laches." *Id.* at 1034.

Applying these doctrines to the facts of this case, plaintiff wrote to defendant in August 1987 accusing defendant's WPR products as infringing the '172 patent, "as exemplified by Models WPR6B and WPR6BB ... Mr. Zetena is also the owner of a pending patent application directed to structures such as you (sic) Models WPR8B and WPR8BB." (Def. Mem. Supp. Att'ys Fees, Ex. 40). This letter indicates that at that time, plaintiff was definitely accusing defendant of infringing its patent with products WPR6B and WPR6BB, and asserting that WPR8B and WPR8BB were not infringing the '172 patent, but could have infringed a pending patent application.

During the following eleven months, plaintiff and defendant made attempts to negotiate a license under the '172 patent. The negotiations covered all recessed wall plates, i.e., the WPR series of products, regardless of whether they met the limitations of the claims in the patent. (Def. Mem. Supp. Att'ys Fees, Exs. 40–50; Caselden Aff. ¶ 60). In a letter dated June 29, 1988, defendant informed plaintiff that if they could not reach an agreement by July 1988, it would remove from its catalogue the WPR6 products, but would continue to sell the WPR Blank and WPR8s, due to the lack of these products having a connector mounted on an angular side wall, as described in the patent. (Def. Mem. Supp. Att'ys Fees, Ex. 49; Caselden Aff. ¶ 65). Plaintiff responded that neither of defendant's offers for payment was acceptable and no license would be issued at that time. (Def. Mem. Supp. Att'ys Fees, Ex. 50;

Caselden Aff. ¶ 66) Defendant discontinued sale of the WPR6 products, assuming the matter had been resolved.

One year later in 1989, a Mr. Joergen Elerud wrote to defendant asserting that it was still selling recessed wall plates covered by patents owned by Encomp and that the plates also infringed another patent assigned to another company also represented by Elerud. (Def. Mem. Supp. Att'ys Fees, Exs. 51–52; Caselden Aff. ¶ 67). At this point, defendant was only selling the recessed wall plates without angularly mounted connectors, including the WPR Blank and the WPR8s. Elerud and defendant corresponded for a brief period without resolution. In his deposition, Maurice Zetena, the president and CEO of the plaintiff company and the inventor of the '172 patent, denied any knowledge that Elerud had contacted defendant on behalf of plaintiff. (Def. Mem. Supp. Att'ys Fees, Ex. 8: Zetena, Jr. Tr. Vol. II, pp. 36–39, 43–50).

Defendant asserts that after this contact with Elerud in 1989, it was not contacted by plaintiff until suit was filed seven years later. However, plaintiff alleges that it wrote to defendant on December 22, 1993 accusing defendant's WCX products of infringing the '172 patent, but not mentioning the WPR series of products. (Def. Mem. Supp. Att'ys Fees, Ex. 6). It is undisputed that between December 1993 and October 1996, when this suit was filed, there was no contact between the parties. The only response from plaintiff to the laches and equitable estoppel defenses is a mention of this 1993 letter.

The delay between plaintiff's accusation of infringement and the initiation of this lawsuit, is at least seven years, thus laches is presumed. Plaintiff offers no explanation to rebut this presumption. The first element of equitable estoppel is also established, since plaintiff contacted defendant about specific products infringing, while stating that other products did not infringe the '172 patent, but may infringe another pending patent application[2]. Then, after brief negotiations with Elerud in 1989 that plaintiff asserts were not on its behalf, there was no action by plaintiff for seven years. Plaintiff's 1993 letter accus-

---

**2.** Plaintiff's suit is based on infringement of the '172 patent solely.

ing the WCX products of infringing but failing to mention the WPR products or any other products later included in plaintiff's suit corroborates the misleading nature of plaintiff's negotiations. Reliance under equitable estoppel is also established by defendant's removal of the WPR6 products from its catalog, which plaintiff specifically named as being infringing, while continuing to advertise the WPR8 products, which plaintiff asserted the '172 patent did not cover.

Defendant meets the third prong of both laches and equitable estoppel by presenting evidence of material prejudice. Defendant stopped marketing those products that were specifically accused of infringing and focused more heavily on marketing the products that were not alleged to infringe the '172 patent. *See ABB Robotics, Inc. v. GMFanuc Robotics Corp.*, 52 F.3d 1062, 1065 (Fed.Cir.1995) (finding prejudice where defendant's allegedly infringing activity was due to delay as evidenced by the fact that defendant halted production of a different product that it believed might infringe the patent).

In terms of evidentiary prejudice, the affidavit of Bruce Rubinger, an expert in patent prior art searches, demonstrates that prior art relevant to the validity of patents in the form of product catalogs, advertisements and actual products are difficult to obtain for the period relevant to the patent's issuance. (Rubinger Aff. ¶¶ 9—13). The ability to find and present prior art in defense of a patent infringement suit is crucial, as the outcome of this case demonstrates. Further, as the portions of their depositions attached to defendant's motion evidence, plaintiff's witnesses have little or no recollection of the events relevant to this matter. Al Contarino, the CEO and president of defendant company and the chief negotiator with plaintiff during the late 1980s died of lung cancer in June, 1997, and the attorney involved in determining whether defendant's products could be considered infringing is also deceased. (Caselden Aff. ¶¶ 12, 84).

Plaintiff offers no evidence of egregious conduct by defendant which would overcome the laches and equitable estoppel defenses. To the contrary, defendant's thorough submissions in support of its motion—including

correspondence between the parties both prior to and after filing the suit—attests to defendant's reasonableness and good faith efforts to resolve the dispute, an attitude directly contrary to that shown by plaintiff.

In *Nordek Corp. v. Garbe Iron Works, Inc.*, 221 U.S.P.Q. 632, 635 (N.D.Ill.1983) the court held that "prosecution of this lawsuit without investigation into possible laches and estoppel defenses was recklessness amounting to bad faith" and awarded defendant attorney's fees under Section 285 on that basis. Similarly, in *Kahn v. Dynamics Corp. of America*, 508 F.2d at 944–45, the lower court's award of attorney's fees was affirmed partly in reliance on an asserted laches defense where three years passed after plaintiff's filing suit during which plaintiff made no attempt to test and consider defendant's contentions that there was no infringement. The court concluded that plaintiff "failed to use reasonable and responsible care in assessing his claims prior to and during suit and that this suit was commenced and prosecuted in bad faith on the part of plaintiff ... such negligence and bad faith are sufficient to justify classifying the case as exceptional" *Id.* at 944–45. As in *Kahn*, defendant repeatedly communicated to plaintiff both before and during the suit the problems with the infringement claims, including that the accused products did not meet the claim limitations in the patent and were barred as a matter of law, as well as the laches and equitable estoppel defenses. Additionally, in attempts to settle the case, defendant handed over to plaintiff its sales figures for the accused products in order to demonstrate that the cost of litigating the matter would far outweigh any damages that plaintiff would win.

Plaintiff offers nothing to support its alleged good faith belief that the laches and equitable estoppel defenses would fail, or that defendant's products infringed the '172 patent.

Defendant has established through clear and convincing evidence viewed in the totality of the circumstances, which plaintiff has barely attempted to rebut, that plaintiff's suit was frivolously brought in that it failed to assess defenses that would essentially have

precluded its claims. Since defendant has proved its entitlement to attorney's fees under Section 285 based on the foregoing discussion, its other arguments need not be reached.

Finally, defendant has not yet submitted an accounting of the fees it claims.[3] The exact amount of the award will be determined after parties have had an opportunity to brief the issue.

## III. CONCLUSION

Defendant's motion for attorney's fees under 35 U.S.C. § 285 (doc. 23) is **granted in part**. Defendant is directed to submit an accounting of his claimed fee within 15 days of the date of this order. The amount of the fee award will be determined on the record as of April 30, 1998, on or before which plaintiff may reply to defendant's claim.

SO ORDERED.

---

3. FED. R. CIV. P. 54 states " the motion ... must state the amount or provide a fair estimate of the amount sought." The advisory committee notes to the rule state "[t]he rule does not require that the motion be supported at the time of filing with the evidentiary materials bearing on the fees."