Michael QUARTARARO, Plaintiff,

v.

James M. CATTERSON, District Attorney of Suffolk County; Mark Cohen, Chief Assistant District Attorney; Demetri Jones, and Michael Miller, Assistant District Attorneys; Raul Russi, Chairman of New York State Division of Parole; Martin Horn, Executive Director of the New York State Department of Parole; William K. Altschuller, Director of the Appeals Unit of the New York State Department of Parole; Patrick Hoy, Area Supervisor; Philip Deluca, and John Callender, Senior Parole Officers; Gerald Burke, Thomas Biddle, Maria Rivera Buchanan, Leo Levy, J. Kevin McNiff, Anthony Umina, Barbara Treen, Daniel Tauriello, George King, Julian Rose, Parole Commissioners, and others, as employees of the Division of Parole; Thomas A. Coughlin, Commissioner of the New York State Department of Correctional Services; James F. Recore, Director of Temporary Release Programs; Brian Fischer, Superintendent of Queensboro Correctional Facility; Enoc Esteves, Deputy Superintendent; William Lester, Senior Counselor and Temporary Release Chairman; Ru-dolph F. Jeffrey, Correction Counselor; as employees of the Department of Correctional Services; William G. McMahon, former Commissioner of the New York State Commission of Correction, Defendants.

No. 93–CV–4059 (JS) (MDG).

United States District Court,
E.D. New York.

Oct. 14, 1999.

Beth G. Schwartz, James A. Cohen, Lincoln Square Legal Services, Inc., Fordham University School of Law, New York City, for plaintiff.

Rebecca Ann Durden, Assistant Attorney General, New York State Department of Law, New York City, for State DOCS and Parole, defendants.

## MEMORANDUM & ORDER

SEYBERT, District Judge.

Pending before the Court is the State Defendants'[1] motion for reconsideration of this Court's June 25, 1999 Order. For the reasons discussed below, the motion is denied.

## BACKGROUND[2]

On December 24, 1998, the State Defendants moved for summary judgment on all

---

1. By Stipulation and Order dated September 7, 1999, all claims presented in the Third Amended Complaint were dismissed with prejudice as to defendants James M. Catter-son, Jr., Mark D. Cohen, and Demetri Jones (the "District Attorney Defendants").

2. Familiarity with the facts of this case is assumed. *See Quartararo v. Catterson,* 917

remaining claims in this lawsuit. The Plaintiff cross-moved for summary judgment on his claim that his procedural due process rights were violated when he was removed from participation in the state's Temporary Work Release Program without notice and without being provided with a written statement of the reasons for his removal. *See* Third Amended Complaint, ¶ 162(a–b). Only the procedural due process claim is relevant to the present motion.

In their motion for summary judgment, the State Defendants argued that the Plaintiff's procedural due process claim failed on two grounds: (1) the claim was barred by the holdings of the Supreme Court in *Edwards v. Balisok,* 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997), and *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994); and (2) the defendants were entitled to qualified immunity. *See* State Defendants' Memorandum of Law in Support of Motion for Summary Judgment, at 12, 19. Notably, the State Defendants did *not* move for summary judgment on this claim on the basis that they did *not* violate Plaintiff's procedural due process rights.

In his cross-motion, Plaintiff argued that his procedural due process rights were violated by his summary removal from the Temporary Work Release Program, without having received, *inter alia,* adequate advance notice of the February 12, 1992 Temporary Release Committee hearing, and a meaningful statement of reasons for his removal. *See* Plaintiff's Memorandum of Points and Authorities in Support of Motion for Partial Summary Judgment, at 1–2. Plaintiff also rebutted the Defendants' arguments that his claim was barred by *Edwards* and *Heck,* and disputed the Defendants' claim to qualified immunity. *See id.,* at 6, 17.

At oral argument on June 25, 1999, the State Defendants conceded that Plaintiff's procedural due process claim was not barred by *Edwards* and *Heck,* in light of the then-recent Second Circuit decision in *Jenkins v. Haubert,* 179 F.3d 19 (2d Cir. 1999). *See* Transcript of Oral Argument ("Transcript"), at 4. After hearing oral argument, the Court delivered its opinion from the bench. *See* Transcript, at 42–49. The Court noted that in their Answer, the State Defendants had not denied the Plaintiff's allegation that he was given no notice of the February 12, 1992 TRC hearing, but merely had denied any wrongdoing. *See* Transcript, at 47; *see also* State Defendants' Answer to Third Amended Complaint, ¶ 100. The Court also pointed out that, in response to the Plaintiff's statement pursuant to Local Civil Rule 56.1, the State Defendants merely commented that they "disputed" Plaintiff's statements that he received no notice of the February 12, 1999 TRC hearing, and that he did not receive a statement of reasons for his removal from the program until July 1993. *See* Transcript, at 47.

Finding that the general denials found in the State Defendants' Answer and 56.1 Counter–Statement were insufficient to raise a genuine issue of material fact that would defeat summary judgment, the Court granted Plaintiff's cross-motion on the procedural due process claim, and correspondingly denied the State Defendants' motion on this claim. *See* Transcript, at 48. The remainder of the State Defendants' motion was granted in part and denied in part. The Court reiterated its holding in a summary Order issued the same day. *See* Order dated June 25, 1999.

The State Defendants now contend that the Court overlooked a material fact which, if it had been considered, would have affected the outcome of the Court's decision to grant summary judgment to the Plaintiff on the procedural due process claim. Specifically, the State Defendants argue that the Court misapprehended

F.Supp. 919, 926–29 (E.D.N.Y.1996); *see also Quartararo v. Hanslmaier,* 28 F.Supp.2d 749 (E.D.N.Y.1998), *aff'd in part and rev'd in part,* *Quartararo v. Hanslmaier,* 186 F.3d 91 (2d Cir.1999).

their Rule 56.1 Counter–Statement. *See* State Defendants' Memorandum of Law in Support of Motion for Reconsideration, at 4. The State Defendants argue that, if the Court properly had viewed the statement, the Court could not have granted summary judgment to the plaintiff on this claim.

### LEGAL STANDARD

 A motion for reconsideration is governed by Local Civil Rule 6.3. A motion under this rule is appropriate where a party believes that the Court has overlooked "matters or controlling decisions" that might have influenced the earlier decision. Local Civil Rule 6.3; *see also Shamis v. Ambassador Factors Corp.*, 187 F.R.D. 148, 151 (S.D.N.Y.1999) (citing cases). Local Civil Rule 6.3 is narrowly construed, and consideration of a motion under the rule is committed to the sound discretion of the district court. *Shamis*, 187 F.R.D. at 151.

In keeping with its design to prevent re-litigation of matters already plainly reviewed by the Court, the rule also requires that a motion for reconsideration be served within ten days after the docketing of the determination of the original motion. Local Civil Rule 6.3. Moreover, no oral argument is available on a motion for reconsideration and no affidavits may be filed unless the court so directs. *Id.*

### DISCUSSION

#### A. Violation of Local Rule 6.3

As a preliminary matter, the State Defendants point out in their reply memorandum of law that the Plaintiff has failed to comply with the strict mandates of Local Civil Rule 6.3. Therefore, the State Defendants argue that their motion for reconsideration should be granted, and that upon reconsideration, the Court should deny Plaintiff's motion for summary judgment on the due process claim.

 Specifically, the State Defendants argue that the Plaintiff's opposition papers, consisting solely of an affidavit submitted by his attorney, do not comply with Local Rule 6.3. While the State Defendants are correct that the Plaintiff was not permitted to file an affidavit in opposition to the motion unless so directed by the Court, the proper remedy for this violation is not simply to grant the motion. Such a result would place undue importance on the technical requirements of the Court's rule and would prevent any meaningful review of the merits of the motion. Rather, the remedy for a violation of Local Rule 6.3 is limited to striking the affidavit and considering the motion for reconsideration based solely on the movant's submissions.

The Court did not grant permission to the Plaintiff to file an affidavit in opposition to the motion. Thus, the Court agrees with the State Defendants that the submission of an affidavit in place of a memorandum of law was improper. The Court therefore strikes the affidavit of Plaintiff's counsel, and declines to consider it in the determination of the motion.

#### B. Merits of the Motion for Reconsideration

 An inmate in New York State "has a protected liberty interest in continuing in a work release program." *Kim v. Hurston*, 182 F.3d 113, 117, (2d Cir. 1999). This liberty interest has been clearly established law in New York since at least 1978, when the United States Court of Appeals for the Second Circuit issued it decision in *Tracy v. Salamack*, 572 F.2d 393, 395–96 (2d Cir.1978). *Kim*, 182 F.3d at 120. Moreover, as pointed out by the Second Circuit, "the minimal procedural due process requirements of notice and reasons for terminating a protected liberty interest have long been established." *Id.* (citing *Wolff v. McDonnell*, 418 U.S. 539, 563–65, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Morrissey v. Brewer*, 408 U.S. 471, 485–89, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)).

Given the Second Circuit's reliance in *Kim* on both *Wolff* and *Morrissey*, it is clear that the due process "notice" requirement mandates that notice of the charges or reason for the hearing be written, and that such notice be provided to the inmate at least twenty-four hours in advance of a hearing. *Wolff*, 418 U.S. at 563–64, 94 S.Ct. 2963. Additionally, the due process "statement of reasons" requirement demands that the decisionmakers provide a " 'written statement . . . as to the evidence relied on and reasons' " for the action taken. *Id.* at 564, 94 S.Ct. 2963 (quoting *Morrissey*, 408 U.S. at 489, 92 S.Ct. 2593). As somewhat prophetically stated by the Supreme Court,

> [w]ritten records of proceedings will thus protect the inmate against collateral consequences based on a misunderstanding of the nature of the original proceeding. Further, as to the disciplinary action itself, the provision for a written record helps to insure that administrators, faced with possible scrutiny by state officials and the public, and perhaps even the courts, where fundamental constitutional rights may have been abridged, will act fairly.

*Id.* at 565, 94 S.Ct. 2963.

In relation to the "statement of reasons" requirement, and relevant to the present dispute, the Second. Circuit has raised the bar even higher. "When procedural due process requires an explanation of the ground for termination of a liberty interest, it requires a statement of the actual ground, and if an initial ground is changed, the person deprived of liberty is entitled to know the new ground." *Kim*, 182 F.3d at 119. Thus, an individual who has been deprived of a protectable liberty interest is entitled to a complete and accurate statement of all the evidence considered by the decisionmakers, and all the reasons for the termination of that interest. Here, the State Defendants admit that, at the very least, Plaintiff was entitled to twenty-four hours notice of the TRC hearing and a statement of the reasons for his removal. *See* Transcript, at 5, 17, 31; *see also* Civil Pre–Trial Order, Schedule C, ¶ 53.[3]

In relation to these procedural due process requirements, the State Defendants contended at oral argument that this case involves nothing more than an "unfortunate set of timing." *See* Transcript, at 14. In relation to such timing, the State Defendants acknowledge that on February 11, 1992 Plaintiff appeared before the New York State Parole Board at Queensboro Correctional Facility. State Defendants' 56.1 Statement, ¶ 18. The following day, February 12, 1992, Plaintiff was advised that he had been denied parole for an additional two years. *Id.*, ¶ 19. On the same day, Plaintiff was referred to the TRC because of his two-year parole hold. *Id.* The TRC apparently sensed a great deal of urgency regarding Plaintiff's parole hold, and brought Plaintiff before the committee the very same day. *Id.*, ¶ 28. By letter dated the same day, February 12, 1992, Plaintiff was advised that with defendant Superintendent Fischer's approval (also apparently obtained the same day),

---

**3.** Plaintiff, citing *Wolff* and *Morrissey*, contends that apart from notice and a statement of reasons for his removal, he additionally was entitled to a reasonable opportunity to be heard; the opportunity to call witnesses; neutral and detached hearing officers; an opportunity to confront and cross-examine witnesses; and the assistance of counsel or a lay person. *See* Transcript, at 21; *see also* Plaintiff's Memorandum of Points and Authorities in Support of Motion for Partial Summary Judgment, at 1–2. The State Defendants disagree that these protections are constitutionally required. *See* Transcript, at 6. However, because only the issues of notice and a statement of reasons are before the Court on this motion, it is not necessary for the Court to decide whether an inmate is entitled to the additional protections that Plaintiff claims are required under the Fourteenth Amendment's Due Process Clause. *But see Wolff*, 418 U.S. at 566, 94 S.Ct. 2963 ("[w]e are also of the opinion that the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals.").

the TRC was recommending that Plaintiff be removed from temporary work release. *Id.*, ¶ 34. Within hours of the February 12, 1992 TRC hearing, Plaintiff was transferred from Queensboro to an upstate facility. Plaintiff's Rule 56.1 Statement, ¶ 93; Civil Pre–Trial Order, Schedule C, ¶ 57.

 Given the rapid nature of these events, which included (1) a parole hearing; (2) a TRC referral; (3) a TRC hearing; (4) a TRC recommendation; (4) obtaining the superintendent's approval of that recommendation; (5) writing a letter to Plaintiff informing him of his removal from temporary work release; and (6) transporting Plaintiff upstate to another facility, it was impossible for the State Defendants to have given Plaintiff the constitutionally required twenty-four hour written notice of the TRC hearing. Nowhere do the State Defendants argue otherwise, and in fact, they concede this point. *See* Transcript, at 23–24; Civil Pre–Trial Order, Schedule C, ¶ 54.

Rather, the heart of the present motion for reconsideration seems to lie with the "statement of reasons" requirement. However, because the State Defendants have conceded that they did not provide Plaintiff with twenty-four hours written notice regarding the TRC hearing, during which his continued participation in work release was in jeopardy, a constitutional violation occurred. An inmate must receive *both* notice *and* a statement of reasons for his removal. *Wolff*, 418 U.S. at 563–65, 94 S.Ct. 2963; *Morrissey*, 408 U.S. at 485–89, 92 S.Ct. 2593; *Kim*, 182 F.3d at 118, 120. There is no genuine issue of material fact in this record regarding the lack of notice provided to Plaintiff about the TRC hearing. This lack of notice, standing alone, violated the due process clause of the Fourteenth Amendment. *See Wolff*, 418 U.S. at 564, 94 S.Ct. 2963; *Kim*, 182 F.3d at 118–19. Therefore, summary judgment properly was granted to the Plaintiff on this claim.

Nevertheless, the State Defendants argue that the Court improperly held that Plaintiff did not receive a statement of reasons for his removal from temporary work release. State Defendants' Motion for Reconsideration, at 4. The State Defendants claim that they properly refuted this factual allegation in their 56.1 Counter–Statement, which referred to their own 56.1 Statement. In particular, the State Defendants refer to paragraphs thirty-two and thirty-three of their 56.1 Statement:

> The TRC believed that the stress associated with the community unrest that would be placed on plaintiff for an additional two years would not be in his best interest. Lester Aff. at ¶ 10; DeLuca Aff. at ¶ 13. Specifically, the TRC held: "[t]he committee recommends that inmate Quartararo be removed from the Temporary Release Program. The committee believes that the best interest of the program, the community and the inmate would not be best served by the inmate remaining in Temporary Release. Due to the notoriety of the inmate's offense, and the current community's demonstrated concern, to place the inmate back into the community would place an undue level of pressure on him, and the program." Recore Aff., Exhibit A; Lester Aff. at ¶ 10; DeLuca Aff. at ¶ 13.

State Defendants' 56.1 Statement, ¶¶ 32–33.

The State Defendants also cited paragraph thirty-four of their 56.1 Statement in their 56.1 Counter–Statement. This paragraph presented the following statement of fact:

> By letter dated February 12, 1992, plaintiff was advised that the TRC, along with Superintendent Fischer's approval, was recommending that he be removed from TRP because "[i]t is not in the best interest of the community and yourself in view of the fact that you have been held 24 months by the Parole Board." Lester Aff., Exhibit [B]. Defendant Director Recore approved plain-

**276**

tiff's removal from the TRP. Recore Aff. at ¶ 14.

State Defendants' 56.1 Statement, ¶ 34.

Plaintiff asserts that he was not provided with the reasons for his removal from the Temporary Work Release Program until July 1993, following his Freedom of Information request. Plaintiff's 56.1 Statement, ¶ 85. The statement of reasons he received in July 1993 was a copy of the letter from defendant Lester, which was dated February 12, 1992. Affidavit of Michael Quartararo, ¶ 54.

In this regard, the State Defendants argue that there is a genuine issue of material fact regarding whether Plaintiff was provided a statement of reasons for his removal from the Temporary Release Program. Simply stated, the State Defendants assert that Defendant Lester's February 12, 1992 letter constituted a statement of reasons for the removal, while Plaintiff claims he did not receive this letter until some fifteen months later.

 However, even if the Court were to assume that the February 12, 1992 Lester letter did reach the Plaintiff, the letter fails to meet the constitutional requirement of a written statement as to the evidence relied on and the reasons for the Plaintiff's removal from the work release program. *See Wolff*, 418 U.S. at 565, 94 S.Ct. 2963. The Lester letter stated only that Plaintiff was removed because his continued participation was not in the best interest of the community in light of his twenty-four month parole hold. Lester Affidavit, Exhibit B. The State Defendants admit, however, that in 1992, the mere fact that an inmate had been held by the Parole Board for a twenty-four month period was not, by itself, a sufficient reason to remove the inmate from the Temporary Work Release Program. Recore Affidavit, ¶ 11. Therefore, the reasons stated in the Lester letter could not have constituted a

complete and accurate statement of reasons for the Plaintiff's removal from work release. *See Kim*, 182 F.3d at 119.

Additionally, the Lester letter fails to point out that the TRC, according to its own report, considered both the notoriety of the Plaintiff's offense and the community's "demonstrated concern" in deciding to remove Plaintiff from the program. Recore Aff., Exh. A, page 3. The Lester letter also fails to include a statement of the evidence relied on by the TRC in making its decision. As a matter of law, the letter was constitutionally insufficient. *See Wolff*, 418 U.S. at 565, 94 S.Ct. 2963 ("there must be a written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action") (quoting *Morrissey*, 408 U.S. at 489, 92 S.Ct. 2593); *Kim*, 182 F.3d at 119 (procedural due process requires "a statement of the actual ground" for termination of a liberty interest). Therefore, even if the State Defendants were correct that Plaintiff received the Lester letter on February 12, 1992, the letter was constitutionally deficient, a constitutional violation still occurred, and summary judgment properly was granted to the Plaintiff on the procedural due process claim.[4]

### CONCLUSION

For the reasons stated above, the State Defendants' motion for reconsideration is DENIED.

SO ORDERED.

---

4. Of course, as noted by the Court at oral argument, there is still a question whether the State Defendants are entitled to qualified immunity. Namely, it is a question of fact for the jury whether the State Defendants' actions in removing Plaintiff from the work release program were objectively reasonable. *See* Transcript, at 44.