**SYSTEM MANAGEMENT ARTS INCORPORATED, Plaintiff,**

v.

**AVESTA TECHNOLOGIES, INC. and David Zager, Defendants.**

No. 97 Civ. 8101(RWS).

United States District Court, S.D. New York.

July 19, 2000.

**520**

Proskauer Rose, New York City (Nancy Kilson, Kenneth Rubenstein, Anthony C. Coles, John C. Stellabotte, of counsel), for plaintiff.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City (Martin Flumenbaum, Eric S. Goldstein, Steven C. Herzog, Robert C. Weisz, of counsel), for defendants.

## OPINION

SWEET, District Judge.

Defendants Avesta Technologies, Inc. ("Avesta") and David Zager ("Zager") (collectively, the "Defendants") have moved for reconsideration, pursuant to Local Civil Rule 6.3, of this Court's summary judgment opinion of March 1, 2000 (hereinafter, "Smarts I"), insofar as it dismissed several of the Defendants' counterclaims. The Defendants have also moved pursuant to Rule 6.3 to strike from the record the Declaration of John Stellabotte dated March 31, 2000 (the "Stellabotte Declaration") and attached exhibits. These motions are opposed by plaintiffs System Management Arts Incorporated ("Smarts"). For the reasons set forth below, the motion to strike is granted and the motion for reconsideration is denied.

### The Parties

Smarts is a corporation organized under the laws of Delaware.

Avesta is a corporation whose principal place of business is in the State of New York.

Zager serves as Avesta's Chief Technology Officer and resides within the State of New York.

### Facts and Prior Proceedings

The facts and prior proceedings were set forth in the March 1 Opinion, familiarity with which is assumed. The motion for reconsideration was filed on March 20, 2000 and deemed fully submitted on April 12, 2000. The motion to strike was filed on April 7, 2000 and deemed fully submitted on May 3, 2000.

### Discussion

**I. The Motion To Strike The Stellabotte Declaration**

The Defendants contend that the Stellabotte Declaration and attached exhibits must be stricken from the record on

the ground that Local Rule 6.3 prohibits submission of affidavits or declarations in connection with a motion for reconsideration absent permission by the court. Smarts concedes that it violated Local Rule 6.3 by failing to seek permission to file the Declaration and attached exhibits, but contends that these materials should be considered because (1) most of the exhibits attached to the declaration are excerpts from other evidentiary material already in the record and (2) the sole item that is new is responsive to the Defendants' motion for reconsideration.

■ A motion for reconsideration is not the proper avenue for the submission of new material. *See* Local Rule 6.3; *Matter of Petition of First American Corp. v. Price Waterhouse LLP*, No. M8–85, 1999 WL 148460 (S.D.N.Y. March 18, 1999). Such material should be stricken and disregarded. *See Quartararo v. Catterson*, 73 F.Supp.2d 270, 273 (E.D.N.Y.1999). To the extent the Stellabotte Declaration and attached exhibits contain material that is already part of the record, it is unnecessary to resort to these new documents in deciding the motion for reconsideration.[1] Therefore, the Stellabotte Declaration and attached exhibits are hereby stricken.

## II. *Legal Standards For A Motion For Reconsideration*

■ Local Rule 6.3 provides in pertinent part: "There shall be served with the notice of motion a memorandum setting forth concisely the matters or controlling decisions which counsel believes the court has overlooked." Thus, to be entitled to reargument and reconsideration, the movant must demonstrate that the Court overlooked controlling decisions or factual matters that were put before it on the underlying motion. *See Ameritrust Co. Nat'l Ass'n v. Dew*, 151 F.R.D. 237, 238 (S.D.N.Y.1993); *East Coast Novelty Co. v. City of New York*, 141 F.R.D. 245, 245 (S.D.N.Y.1992).

■ Local Rule 6.3 is to be narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the court. In deciding a reconsideration and reargument motion, the Court must not allow a party to use the motion as a substitute for appealing from a final judgment. *See Morser v. AT & T Information Systems*, 715 F.Supp. 516, 517 (S.D.N.Y.1989); *Korwek v. Hunt*, 649 F.Supp. 1547, 1548 (S.D.N.Y.1986), *aff'd*, 827 F.2d 874 (2d Cir. 1987). Therefore, a party may not "advance new facts, issues or arguments not previously presented to the Court." *Morse/Diesel, Inc. v. Fidelity & Deposit Co. of Md.*, 768 F.Supp. 115, 116 (S.D.N.Y. 1991). The decision to grant or deny the motion is within the sound discretion of the district court. *See Schaffer on Behalf of Triton Energy Corp. v. Soros*, No. 92 Civ. 1233, 1994 WL 592891, at *1 (S.D.N.Y. Oct. 31, 1994).

■ Upon receiving such a motion, a court may do any of the following. First, the motion may be denied, thereby leaving the original decision unaltered. *See Lehmuller v. Incorporated Village of Sag Harbor*, 982 F.Supp. 132, 135 (E.D.N.Y.1997). Alternatively, "the Court can grant a motion to reargue for the limited purposes of considering the effect of an overlooked matter," and after doing so may affirm and/or clarify the original decision. *Lehmuller*, 982 F.Supp. at 135–36; *see In re First American Corp.*, No. M8–85, 1998 WL 148421, at *3 (S.D.N.Y. Mar.27, 1998), *aff'd*, 154 F.3d 16 (2d Cir.1998); *Violette v. Armonk Assocs., L.P.*, 823 F.Supp. 224, 226–27, 231 (S.D.N.Y.1993); *Brignoli v. Balch Hardy & Scheinman, Inc.*, 735 F.Supp. 100, 102–03 (S.D.N.Y.1990). Finally, having granted a motion to reconsider, the Court may vacate the original decision. *See Morin v. Trupin*, 823 F.Supp. 201, 203 (S.D.N.Y.1993); *Travelers Ins.*

---

1. Nor, as explained below, does resolution of the motion for reconsideration require a canvassing of this evidence, which was already considered by the court in deciding *Smarts I.*

*Co. v. Buffalo Reinsurance Co.*, 739 F.Supp. 209, 211–13 (S.D.N.Y. 1990).

■ The counterclaims at issue allege unfair competition under the Lanham Act and the common law of New York, as well as violations of GBL §§ 349 and 350. As discussed in *Smarts I*, the theory behind these claims is that Smarts initiated this suit and publicized incorrect information about it for strategic reasons, namely, to thwart Avesta in its efforts to market a competing software product. The counterclaims were dismissed on the ground that in order to prevail Avesta would have to establish bad faith on the part of Smarts, and the record is devoid of evidence to that effect.

The Defendants contend that this Court overlooked two of the three types of allegedly false statements made by Smarts upon which the relevant counterclaims were predicated, namely, statements concerning Smarts' theft of trade secret allegation and statements concerning the capabilities of Avesta's products. The Defendants further contend that the rule stated in *Zenith Electronics Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1353, 1355 (Fed.Cir.1999) and applied by this Court that, absent bad faith, marketplace activity in support of a patent will not subject a patentee to liability under the Lanham Act (or state law claims based on the same activity), does not apply to these statements.

This argument was raised orally at the proceedings on October 13, 1999. Both the argument and the relevant factual matters were considered in determining that the counterclaims should be dismissed, although the Court declined in *Smarts I* to summarize all of the evidence before it. As was explained therein, a comprehensive summary of all the evidence, much of it of doubtful worth and admissibility, was not warranted although the parties skirmished over every last item. Nor is such a summary warranted here even though the parties continue to spar ad infinitum over this material. Some additional comments on why the counterclaims cannot be sustained, however, are appropriate.

The Defendants' theory, enunciated in their answer and counterclaims, is that Smarts engaged in anti-competitive behavior by, first, "filing an objectively baseless patent infringement litigation" and then by "repeat[ing] . . . the false and highly damaging allegations in the complaint to Avesta's existing and/or potential investors and customers." These acts allegedly constituted "false and misleading representations of fact in commercial advertising that misrepresent the nature, characteristics and qualities of the Avesta products." Thus, the allegedly false statements as to trade secret misappropriation and the capabilities of Avesta's products were part and parcel of the filing of this patent infringement suit and dissemination of information about it.

As noted above, the Defendants claim that they need not show bad faith with respect to the bringing of a "baseless" suit itself, at least insofar as it concerns matters other than patent infringement per se. This theory if correct would mean that Smarts could be liable if it ultimately turned out that the suit was without merit, or "baseless," even though it was initiated in good faith. If that were the case a plaintiff could not allege patent infringement—or trade secret misappropriation—without gambling that it would be automatically liable on a counterclaim if it failed to prevail in its claim.

With respect to the claim that Smarts is liable for disseminating information about the suit including information about the trade secret misappropriation allegations as well as the patent infringement allegations, no distinction between these allegations is practical. *Cf. Zenith*, 182 F.3d at 1354 (declining to distinguish between claim based on publication of infringement allegations and claim based on publication of allegations infringer could not "design around" relevant patent because "such line drawing would unnecessarily complicate

the law, creating [an] issue as to whether a particular statement falls in the former or latter category.") It should also be noted that *Smarts I* already found that there is no evidence that Smarts provided incorrect information about the lawsuit to market participants.

 A defendant in a spurious patent infringement action is not without recourse. As discussed in *Smarts I*, where there was bad faith in bringing such a suit or disseminating information about it then the defendant may bring a counterclaim under the Lanham Act or under state laws that include a bad faith requirement. Although not mentioned in *Smarts I*, it is also the case that a prevailing defendant in such a suit may seek attorneys' fees and disbursements. *See* 35 U.S.C. § 285 (providing for award in patent infringement suits of reasonable attorneys' fees to prevailing party in exceptional cases); *Encomp, Inc. v. L–com, Inc.*, 999 F.Supp. 264, 266 (D.Conn.1998) (prevailing accused infringer can seek attorneys' fees where patentee acted in bad faith by engaging in misconduct during litigation, vexatious or unjustified litigation, or patentee knew or should have known suit was baseless). This statutory remedy "serves as a deterrent to 'improper bringing of clearly unwarranted suits' for patent infringement.'" *Automated Business Companies, Inc. v. NEC America, Inc.*, 202 F.3d 1353, 1355 (Fed.Cir.2000) (citation omitted).

As explained in *Smarts I*, the Defendants have failed to produce evidence that this suit and the conduct around it are simply a strategy by Smarts to stifle its competition. The Defendants may at the end of the litigation seek to establish that the suit was frivolous, and the way Smarts conducted itself was wrongful, and to recover their attorneys' fees and disbursements. *See* 35 U.S.C. § 285. The counterclaims, however, cannot be sustained and must be dismissed.

*Conclusion*

For the reasons set forth above, the motion for reconsideration is denied and the motion requesting that the Court strike is granted.

It is so ordered.