## In re SOLV–EX CORPORATION SECURITIES LITIGATION.

### No. 96 CIV. 7575(RMB).

United States District Court, S.D. New York.

April 30, 2002.

Milberg Weiss Bershad Hynes & Lerach LLP and Wechsler Harwood Halebian & Feffer LLP, New York City, for Plaintiff.

John S. Rendall, Pro se.

Herbert M. Campbell, II, Pro se.

Louis Solomon New York City, for Defendant W. Jack Butler.

### *AMENDED ORDER OF DISMISSAL*

BERMAN, District Judge.

## I. Background

By Order, dated April 12, 2002 ("Order"), the Court, among other things, granted Plaintiffs' application and dismissed this matter without prejudice pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ.P.") 41(a)(2), and denied *pro se* Defendant John S. Rendall's ("Rendall") (further) application, dated January 23,

2002, for leave to amend his Answer without prejudice to his pursuing in a separate action any claims, if any, he may have. *See* Order attached hereto. On or about April 16, 2002, Rendall moved for reconsideration of the Order, pursuant to Local Civil Rule 6.3 of the Southern District of New York ("Rendall's Mem."), and requested further "Findings of Fact to support the Conclusions of Law." Rendall's Mem. at 3. On April 19, 2002, Plaintiffs opposed Rendall's application for reconsideration and, on April 23, 2002, Rendall submitted a reply memorandum ("Rendall's Reply Mem."). **For the following reasons, Rendall's motion is granted in part and denied in part.**

## II. Standard of Review

 Motions for reconsideration are governed by Local Civil Rule 6.3 and are within the sound discretion of the district court. *Schaffer v. Soros,* No. 92 Civ. 1233, 1994 WL 592891, at *1 (S.D.N.Y. Oct. 31, 1994); *see System Management Arts. Inc. v. Avesta Tech., Inc.,* 106 F.Supp.2d 519, 521 (S.D.N.Y.2000). "[T]he movant must demonstrate that the court overlooked controlling decisions or factual matters that were put before it on the underlying motion that might reasonably be expected to alter the conclusion reached by the court on the underlying motion." *Stoner v. New York City Ballet Co.,* No. 99 Civ. 0196, 2002 WL 523270, at *2 (S.D.N.Y. April 8, 2002) (citing *Dellefave v. Access Temporaries, Inc.,* No. 99 Civ. 6098, 2001 WL 286771, at*1 (S.D.N.Y. Mar. 22, 2001)). A Rule 6.3 motion is "not a motion to reargue those issues already considered when a party does not like the way the original motion was resolved." *In re Houbigant, Inc.,* 914 F.Supp. 997, 1001 (S.D.N.Y.1996).

Even where, as here, these bases for reconsideration are not present, courts have written to clarify their prior ruling. *See, e.g., Von Schmidt v. Kratter,* 9 F.Supp.2d 100, 104 (D.Conn.1997).

## III. Analysis

The Court here clarifies the Order by amplifying and supplementing its prior findings of fact and conclusions of law.[1]

The Order was based upon the record of these proceedings, including, among other things, the oral argument held April 12, 2002 and the prior submissions of the parties; Plaintiffs' Memorandum of Law, dated March 1, 2002, in support of their motion voluntarily to dismiss this action without prejudice ("Pls.' Mem."); and Rendall's Memorandum of Law, dated March 22, 2002, in opposition to that motion ("Rendall's Opp. Mem.").

Rendall's Mem. presents a helpful suggestion that the Court clarify and expand upon its Order to include additional findings of fact and conclusions of law. *See Mattel, Inc. v. Robarb's, Inc.,* No. 00 Civ. 4866, 2001 WL 797478, at *2 (S.D.N.Y. July 12, 2001) ("Reconsideration is granted in part, solely to clarify the reasoning supporting the Court's holding ..."). The Court, in addition to previous findings of fact and conclusions of law, finds the following in support of its earlier determination:

1. No motion for class certification has been filed and no class has been certified;

2. Plaintiffs had purchased shares of Solv–Ex Corporation ("Solv–Ex") between February 15, 1995 and September 30, 1996 ("Class Period") and commenced this action in the Fall of 1996

---

1. The Court incorporates by reference, among other things, the prior proceedings herein, prior findings of fact and conclusions of law,

and the record of the proceedings held April 12, 2002.

(as a putative class action) against, among others, Solv–Ex and certain of its officers and directors, including Rendall, as Chief Executive Officer and Chairman of the Board of Solv–Ex, Herbert M. Campbell, II, Senior Vice–President and Secretary ("Campbell"), and W. Jack Butler, President ("Butler") (collectively, the "Individual Defendants");

3. During the Class Period, Solv–Ex purported to be "in the process of implementing a project to commence mining operations and to construct a commercial oil extraction and refining plant and an accompanying mineral co-production plant facility in Alberta, Canada." Second Consolidated Amended Class Action Complaint, dated July 21, 1997, ¶ 2. Plaintiffs alleged that "although [Solv–Ex] repeatedly represented throughout the Class Period that the Alberta Project was on track to begin commercial oil production by late 1996 or early 1997, unbeknownst to investors, Solv–Ex was representing to the Alberta Energy and Utilities Board [ ] during the Class Period that it was constructing only an 'experimental' plant." *Id.* ¶ 7. Plaintiffs further alleged, among other things, that Reuters News Service quoted Rendall as stating that "construction of the $150 million plant would be completed in December [1996]" and that "[t]he technology patented by Solv–Ex had worked in a pilot plant." *Id.* ¶ 118;

4. On December 17, 1996, the Court (Preska, J.) consolidated the action styled *Sedita v. Solv–Ex Corp. et al.*, 96 Civ. 7575 with the action styled *Grossman v. Butler, et al.*, 96 Civ. 8744;

5. By Order, dated December 17, 1996, the Court (Preska, J.) appointed Lead Plaintiffs in this action and approved the Lead Plaintiffs' selection of Milberg Weiss Bershad Hynes & Lerach LLP and Wechsler Harwood Halebian & Feffer LLP as Co–Lead Counsel;

6. Plaintiffs filed their Second Consolidated Amended Class Action Complaint ("Complaint") on or about July 21, 1997;

7. The Individual Defendants, who were all initially represented by counsel, sought and received (no less than) twelve extensions of time to answer the Complaint;

8. On or about August 1, 1997, Solv–Ex filed for bankruptcy in the United States Bankruptcy Court for the District of New Mexico. By Order, dated June 25, 1999, the Court dismissed Plaintiffs' claims against Solv–Ex with prejudice. Order, dated June 25, 1999, at 1; *see* Solv–Ex Corporation's Amended Plan of Reorganization, dated June 23, 1998, Article VIIIa, Article IX §§ 9.1, 9.3, 9.4 ("all Persons who have held, hold or may hold Claims . . . are permanently enjoined . . . from (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim against . . . Solv–Ex . . .");

9. On July 27, 1999, the Individual Defendants moved, by their counsel, to dismiss the Complaint pursuant to Fed. R.Civ.P. 9(b) and 12(b)(6). While the Individual Defendants' motion to dismiss the Complaint was pending, all discovery was stayed. *See* 15 U.S.C. § 78u–4(b)(3) (Private Securities Litigation Reform Act);

10. On September 6, 2000, the Court denied the Individual Defendants' motion to dismiss. Order, dated September 6, 2000, at 10, 12 (Plaintiffs "have adequately alleged facts that constitute strong circumstantial evi-

dence of conscious misbehavior or recklessness by Defendants" under Section 10(b) ("Section 10(b)") of the Securities and Exchange Act of 1934 as amended, 15 U.S.C.A. § 78j(b) ("Exchange Act") and "have met their [ ] pleading burden" under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).);

11. In a letter to the Court, dated September 19, 2000, Stuart T. Rebish, Esq. of Shiff & Tisman, counsel for Solv–Ex, Rendall, and Campbell, wrote that "[o]ur statements for services rendered, some as early as September 1999, remain unpaid, and we have expended additional time for which we have not yet submitted a bill. **Messrs. Rendall and Campbell have informed us that they are unable to pay us what we are owed, and that they cannot pay us for future services.**" (emphasis added). In a letter to the Court, dated September 21, 2000, John D. Phillips, Esq., co-counsel for Solv–Ex, Rendall, and Campbell, wrote: "Both Messrs. Rendall and Campbell have informed me that they cannot pay counsel for any services, past or future, rendered in their defense."[2] The Court, reluctantly, permitted Messrs. Rebish and Phillips to withdraw from the action and, mindful of the complexity of the issues involved, nevertheless allowed Messrs. Rendall and Campbell to proceed *pro se*. *See* Transcript, dated November 9, 2000, at 4 (The Court "worried about people's ability [acting *pro se* ] to protect and vindicate their rights.");

12. Defendant Campbell is a lawyer and was General Counsel to Solv–Ex. Defendant Rendall is not a lawyer;

13. On or about December 13, 2000, Rendall filed his Answer. It purported to include a counterclaim against shareholder Plaintiffs and their attorneys. Answer at 22–23 ("Rendall requests that plaintiff[s'] counsel ... be made involuntary party plaintiffs, and that the allegations set out in this counterclaim be asserted against them as the primary wrongdoers, or, as jointly and severally liable with the named plaintiffs for the damages suffered by Defendant Rendall.");

14. On February 14, 2001, at a conference held with the Court, Plaintiffs' counsel and Rendall discussed with the Court issues regarding Rendall's counterclaim including a possible motion to dismiss the counterclaim. *See* Transcript, dated February 14, 2001; *see also* Rendall's Proposed Stipulation, dated February 6, 2001 ("It is hereby stipulated ... that the counterclaims contained in the Answer ... are hereby withdrawn without prejudice...."). Plaintiffs and Rendall did not agree upon Rendall's suggestion that the statute of limitations for his counterclaim be tolled. *Id.* at 4;

15. At the February 14, 2001 conference, the Court granted Rendall's request to amend his Answer and set a briefing schedule for Plaintiffs, thereafter, to move to dismiss Rendall's counterclaim. *Id.*, at 11–12 (Rendall was directed to serve and file an amended Answer by February 26, 2001 and Plaintiffs were to file their motion to dismiss by March 20, 2001.);

16. On February 23, 2001, three days before Rendall's amended Answer was

---

**2.** As discussed more fully below, Mr. Phillips no longer represents Solv–Ex, Rendall, and Campbell but, somewhat surprisingly, has recently contacted the Court on behalf of approximately twenty-five former shareholders of Solv–Ex. *See* paragraphs 24, 26, 28–30.

due to be filed with the Court, **upon the stipulation of Rendall and Plaintiffs' Co–Lead Counsel,** Messrs. Wechsler Harwood Halebian & Feffer LLP and Milberg Weiss Bershad Hynes and Lerach LLP, the Court ordered the withdrawal of Rendall's counterclaims without prejudice. Order, dated February 23, 2001, at 1 ("the counterclaims ... are hereby withdrawn without prejudice");

17. On May 31, 2001 and January 31, 2002, respectively, in response to letters received by the Court from persons identifying themselves as former shareholders of Solv–Ex, the Court issued orders advising that "this action has not been certified as a class action," Order, dated May 31, 2001, and that "such shareholders should be aware that they are also (and have been throughout this proceeding) free to pursue issues they may have with any ... counsel of their choosing." Order, dated January 31, 2002. Copies of these orders were mailed to those persons who had written the Court;

18. In or about June 2001, Plaintiffs sought discovery of additional financial information to determine whether the remaining Individual Defendants, i.e. Messrs. Rendall, Campbell, and Butler, had the financial resources to satisfy a potential judgment in this action if the case were to advance to trial and judgment;

19. On June 26, 2001, Rendall requested leave to amend his Answer to include his previously withdrawn counterclaims, and to include claims against Plaintiffs, Plaintiffs' attorneys, and presumably many unnamed "competitors" and "short sellers" and the Securities and Exchange Commission.

Rendall's Mem. at 2 ("The plaintiff[s'] attorney(s) worked with the short sellers of Solv–Ex Corporation common stock, the Company['s] (Solv–Ex Corporation) [ ] competitors, and the Securities and Exchange Commission to unlawfully stop the financing efforts of Solv–Ex Corporation, and thereby caused it to file for Chapter 11 bankruptcy protection ...."). The Court denied Rendall's request by Order, dated July 11, 2001 and by Memo Endorsed Order, dated July 23, 2001. *See* Order, dated July 11, 2001, at 9 (" 'Mr. Rendall has not presented *any* new facts to support repleading the dismissed counterclaim.' ... Defendant has already received more than enough extensions of time to answer this 1996 complaint and to prepare his defenses and counterclaims. The current counterclaim will serve only to further lengthen this already five year old case.") (emphasis in original) (citation omitted);

20. Defendant Rendall resisted the additional discovery referred to in paragraph eighteen above. After a conference before Magistrate Judge Ronald L. Ellis on October 15, 2001, Plaintiffs were permitted to serve the Individual Defendants with their discovery requests;

21. On November 1, 2001, Rendall moved for a protective order precluding additional financial discovery and, on November 14, 2001, Magistrate Ellis denied Rendall's motion and ordered Rendall to respond to Plaintiffs' discovery requests by November 23, 2001. Order, dated November 14, 2001. On November 26, 2001, Rendall filed objections to Magistrate Ellis' ruling. On January 9, 2002, the Court affirmed Magistrate Ellis' rul-

ing and concluded that Rendall "failed to show good cause to justify an order of protection" precluding discovery of his finances. Order, dated January 9, 2002, at 1 (quoting Order, dated November 14, 2001). On January 18, 2002, Rendall responded to Plaintiffs' discovery requests; on January 22, 2002 Campbell served his response; and on February 15, 2002, Butler served his response. The financial disclosures of the Individual Defendants, according to Plaintiffs, showed that they had "limited liquid assets." Pls.' Mem. at 5;[3]

22. On January 23, 2002, Rendall (again) applied for leave to amend his Answer to assert counterclaims purportedly as a class representative. *See* Letter to the Court, dated January 23, 2002 ("John S. Rendall asserts these claims of [No.] 96 Civ. 6057[, *Solv–Ex Corp. v. Parker Quillen, et al.,* which were dismissed without prejudice on July 31, 1997,] as belonging to him and others so situated (class members) in [No.] 96 Civ. 7575."); Transcript, dated April 12, 2002, at 27–28 ("the wrongful conduct was tort, antitrust, malicious use of process");

23. On March 1, 2002, Plaintiffs filed a motion voluntarily to dismiss this matter as against the Individual Defendants without prejudice, pursuant to Fed.R.Civ.P. 41(a)(2), and opposed Rendall's request for leave to amend his Answer. Following the financial discovery referred to in paragraph eighteen above, Plaintiffs had concluded that the Individual Defendants "do not have the financial resources

to satisfy a potential judgment in this action, and [ ] continued pursuit of this action through long and costly proceedings would result, at best, in a hollow victory for plaintiffs and the putative class." Pls.' Mem. at 1;

24. Individual Defendants Campbell and Butler did not oppose Plaintiffs' motion voluntarily to dismiss this matter. Nor did Mr. Phillips "oppose" Plaintiffs' motion on behalf of the approximately twenty-five ex-shareholders of Solv–Ex who had contacted him. Transcript, dated April 12, 2002, at 35 (Mr. Phillips stated that these ex-shareholders "are certainly not opposed to the dismissal of the claims against the individual named defendants"); *see* Letter to the Court, dated April 5, 2002;

25. Only Rendall opposed Plaintiffs' motion. On March 22, 2002, Rendall submitted a memorandum of law in opposition to Plaintiffs' motion voluntarily to dismiss and in support of his (further) application to amend his Answer. Transcript, dated April 12, 2002, at 27 (Rendall stated that Plaintiffs "filed the complaint ... to damage me. And the wrongful conduct was tort, antitrust, malicious use of process. They [Plaintiffs] worked in [a conspiracy] with others to destroy Solv–Ex."). On April 5, 2002, Plaintiffs submitted a reply memorandum responding to Rendall's opposition ("Pls.' Reply Mem.");

26. On April 12, 2002, oral argument was held on Plaintiffs' motion voluntarily to dismiss this matter and Rendall's opposition and (further) application for leave to amend his Answer. *See* Transcript, dated April 12, 2002. At-

---

**3.** It should be noted that Rendall has asserted that while he has limited liquid assets, he has "several hundred million" dollars in intellec-

tual property. *See, e.g.,* Transcript, dated February 1, 2002, at 6; Transcript, dated April 12, 2002, at 24–25.

tendees included, Plaintiffs' Co–Lead Counsel, Messrs. Wechsler Harwood Halebian & Feffer LLP and Milberg Weiss Bershad Hynes and Lerach LLP, Individual Defendant Butler's counsel, Louis Solomon, Esq., Individual Defendant Rendall, Mr. Phillips, and Defendant Rendall's brother, David Rendall;

27. Rendall does not contest that he lacks the financial resources to satisfy a potential judgment by Plaintiffs, *see* Transcript, dated April 12, 2002, at 24–25 ("I am not making the claim that I have resources to satisfy a judgment.");

28. Mr. Phillips' role in this proceeding is unclear. Originally, as noted, he was co-counsel to Solv–Ex, Rendall, and Campbell. At the oral argument, Mr. Phillips "appeared" on behalf of former shareholders of Solv–Ex but acknowledged that, since he had previously represented Solv–Ex, Rendall, and Campbell in this matter, he "would have grave problems representing [these] other shareholders seeking to intervene as members within [the proposed] class . . . and [ ] would never seek to do that [because of] a conflict interest." Transcript, dated April 12, 2002, at 35. Indeed, Mr. Phillips, who is not a member of the bar of the Southern District of New York, *see id.* at 33–34, did not (even) seek *pro hac* admission for the April 12, 2002 proceeding pursuant to Local Rule 1.3. U.S. Dist. Ct. Rules S. & E.D.N.Y., Civil Rule 1.3 (2001); *see* Memo Endorsed Order, dated April 9, 2002 ("Please check the FRCP [Federal Rules of Civil Procedure] & Local Rules [of the Southern District of New York] regarding what appropriate role you may play. Subject only to that, you are more than welcome.");

29. At the oral argument, Mr. Phillips also expressed the view that these ex-shareholders who had contacted him "are certainly not opposed to the dismissal of the claims against the individual named defendants . . . ." Transcript, dated April 12, 2002, at 35;

30. By letter to the Court, dated April 23, 2002, Mr. Phillips, purportedly on behalf of ex-shareholders, stated that these ex-shareholders "support" Rendall's request for reconsideration. Letter to the Court, dated April 23, 2002, at 2;

31. None of the ex-shareholders of Solv–Ex who wrote to the Court or who are in contact with Mr. Phillips have sought to intervene pursuant to Fed. R.Civ.P. 24. *See* Letter to the Court from Robert A. Wallner, Esq., dated April 26, 2002.

### CONCLUSIONS OF LAW

1. There is a sound basis to dismiss this matter without prejudice since Solv–Ex has already been dismissed from this matter with prejudice, the Individual Defendants cannot satisfy a potential judgment in this action, no class has been certified, two of the three Individual Defendants do not oppose dismissal, and no prejudice has been shown. *Guzman v. Hazemag U.S.A., Inc.,* 145 F.R.D. 308, 309 (E.D.N.Y.1993) ("[T]he presumption in this circuit is that a court should grant a dismissal pursuant to [Rule] 41(a)(2) absent a showing that the defendants will suffer substantial prejudice as a result.");

2. As noted, Individual Defendants Campbell and Butler do not oppose Plaintiffs' motion. Rendall's contentions that he may be prejudiced, re-

spectfully, have no merit. Indeed, it is the Plaintiffs who would be prejudiced if Rendall's "claims" are allowed to go forward here;

3. There has not been any undue vexatiousness by Plaintiffs. If anything, Defendants have slowed things down. *Saatchi Gallery v. Gorney,* No. 98 Civ. 4542, 1999 WL 33464, at *1 (S.D.N.Y. Jan. 26, 1999). The Defendants have, among other things, made repeated requests for adjournments, moved to allow counsel for Rendall and Campbell to withdraw from representing them in this matter, and countenanced Rendall's *pro se* efforts to preclude discovery regarding his personal financial information and to amend his Answer. *See In re Petition of Shavit,* 197 B.R. 763, 769 (Bkrtcy.S.D.N.Y.1996) (granting petitioner's motion voluntarily to dismiss without prejudice and noting that "the Debtors were not forthcoming with their responses to the Petitioner's interrogatories" and thereby "created an obstacle to the Petitioner's . . . decision whether to proceed or dismiss");

4. The parties have, thus far, engaged in only limited discovery, largely because of Defendants' delays. Letter from Rendall to the Court, dated January 23, 2002, at 2 ("[d]iscovery by plaintiffs is in the early stages"); *Saatchi Gallery,* 1999 WL 33464, at *1 (granting motion voluntarily to dismiss without prejudice where "Defendants [had] not sought discovery" and "other than correspondence, Court conferences, and defendants' answer," the action had "not progressed");

5. Neither Plaintiffs nor the Individual Defendants have suggested that attorneys' fees should be awarded, nor is such an award appropriate. *See Read Corp. v. Bibco Equipment Co., Inc.,* 145 F.R.D. 288, 290 (D.N.H.1993) ("[A]n award of attorneys' fees is [only] appropriate when an action is dismissed without prejudice, and subject to relitigation, in order to reimburse defendant for expenses incurred in preparing work product that cannot be used in defending the resurrected cause of action.") (citations and quotation marks omitted);

6. Granting Plaintiffs' motion to voluntarily dismiss does not prejudice and would leave Rendall free to "purs[ue] in a separate action any claims, if any, he may have." Order, dated April 12, 2002. As discussed more fully below, Rendall's latest application to amend his Answer is, among other things, non-specific, and borders on being incoherent and frivolous, *see* ¶ 8 below. **It is not even clear that this would be an appropriate forum for Rendall to bring any claims he may have since he apparently has grievances against the Securities and Exchange Commission, and other unnamed "competitors" and "short sellers" who are not parties to this case.** *See, e.g.,* ¶ 10 below;

7. Plaintiffs' rationale for their request to dismiss this case— that the Individual Defendants lack the financial resources to satisfy a potential judgment— is appropriate. *See In re Petition of Shavit,* 197 B.R. at 769 (plaintiff "could at best achieve an expensive Pyrrhic victory"). As noted, Solv–Ex filed for bankruptcy on August 1, 1997 and Plaintiffs' claims against Solv–Ex here were dismissed with prejudice on June 25, 1999, and the Individual Defendants, most of whom agree with dismissal, have limited liquid assets. *See* ¶¶ 8, 21 above;

8. Rendall's (further) application for leave to amend his Answer should be

denied without prejudice. *See* Order, dated July 11, 2001 ("Defendant [Rendall] has already received more than enough extensions of time to answer this 1996 complaint and to prepare his defenses and counterclaims. The current counterclaim will serve only to further lengthen this already five year old case."). Rendall's allegations— e.g. "[t]hese claims were against plaintiffs ... for conspiracy with the competitors and short sellers [and the Securities and Exchange Commission] to destroy Solv–Ex Corporation and this Defendant [Rendall]"— are non-specific and border on incoherent and frivolous, *see Prezzi v. Schelter,* 469 F.2d 691 (2d Cir.1972) (leave to amend denied where claim was "a labyrinthian prolixity of unrelated and vituperative charges that defied comprehension"). Also, Rendall, as a *pro se* litigant, is not an appropriate representative of a class, *McLeod v. Crosson,* No. 89 Civ. 1952, 1989 WL 28416, at *1 (S.D.N.Y. Mar. 21, 1989) ("It is well settled in this circuit that *pro se* plaintiffs cannot act as class representatives."). Further, it seems hugely inappropriate for a defendant corporate officer, such as Rendall, to seek to either represent and/or litigate against his former shareholders who are Plaintiffs, *see* Fed.R.Civ.P. 23(a) (In order to certify a class action, among other things, "the claims or defenses of the representative parties [must be] typical of the claims or defenses of the class"); *In Re Drexel Burnham Lambert Group, Inc.,* 960 F.2d 285, 291 (2d Cir.1992) (Typicality "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove defendant's liability.");

9. This action "was brought on behalf of purchasers of Solv–Ex stock claiming that they purchased Solv–Ex at an artificially inflated price [by, among other things, the very actions of Mr. Rendall and others as corporate insiders]." Pls.' Reply Mem. at 2. Plaintiffs alleged, among other things, that Rendall knew that "commercial production would not be scheduled to begin until July 2002 at the earliest ...[y]et, throughout the Class Period, [ ] consistently made false and misleading statements that commercial oil production from its tar sands leases in Alberta would commence by late 1996 or early 1997 at the latest." Complaint ¶ 138. "Mr. Rendall's suggestion that the stock price was artificially depressed is an altogether different claim." Pls.' Reply Mem. at 2; *see World Wide Communications, Inc. v. Marc Rozar, et al.,* No. 96 Civ. 1056, 1998 WL 249184, at *4 (S.D.N.Y. May 15, 1998) ("it is simply too late in the case to allow [defendant] to assert a new and unrelated counterclaim");

10. Rendall's would assert claims against individuals and entities who are not specified, much less currently parties to this matter. Rendall's Reply Mem. at 4 (Plaintiffs conspired "with the competitors and short sellers to destroy Solv–Ex Corporation and this Defendant [Rendall]."). This would clearly prejudice Plaintiffs. *See Clay v. Martin,* 509 F.2d 109, 113 (2d Cir. 1975) (leave should be denied where it shall cause "undue delay or prejudice to the opposing party");

11. At least some of Rendall's "claims" against individuals and entities that are not parties to this matter, i.e. the "short sellers" and "competitors" and the Securities and Exchange Commission, are legally insufficient, even under a liberal (*pro se* ) reading of his

submissions. *See* Answer, filed December 13, 2000, at 23 ("The plaintiff[s'] attorney(s) worked with the short sellers of Solv–Ex Corporation common stock, the Compan[y's] (Solv–Ex Corporation) [ ] competitors and the SEC (Securit[ies] and Exchange Commission) to unlawfully destroy Solv–Ex by reducing the value of its common stock during the class period and subsequently."); *Feldman v. Lifton,* 64 F.R.D. 539, 543 (S.D.N.Y.1974) (leave to amend should be denied "where [the party's] proposed amendment advances a claim or defense that is legally insufficient on its face or otherwise clearly without merit"); *see Trice v. Clark,* 131 F.3d 132, 1997 WL 738116, at *1 (2d Cir.1997) (leave to amend denied where plaintiff advanced "only vague, conclusory allegations of wrongdoing" by defendants); *see also Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1127 (2d Cir.1994) (Section 10(b) claim dismissed where plaintiff failed to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.") (citations omitted);

12. As to Rendall's malicious prosecution charges, "a claim in the nature of malicious prosecution, which arises out of the bringing of the main action, generally cannot be asserted either as a compulsory or a permissive counterclaim, since such a claim is premature prior to the determination of the main action." *Harris v. Steinem,* 571 F.2d 119, 124 (2d Cir.1978) (citations omitted);

13. Under the Court's Order, dated April 12, 2002, Rendall is free to pursue any claim(s) he may have in a (separate) civil suit in an appropriate forum. He is advised, strongly, once again, to retain counsel because, as the Court has previously cautioned, these are very complex issues. *See* Transcript, dated January 22, 2001, at 8 ("This is one of the dangers in having *pro se* representation, it seems to me, and that is that you may not be well versed in the procedures and the laws that apply.");

14. No ex-shareholders have moved to intervene in this matter. *See United States v. Pitney Bowes, Inc.,* 25 F.3d 66, 70–71,73 (2d Cir.1994) (post-judgment intervention denied as untimely under multi-factor analysis). Mr. Phillips, presumably on behalf of the ex-shareholders who have contacted him, has not even moved to be admitted before the Court *pro hac vice* and such ex-shareholders do not oppose Plaintiffs' motion. *See* N.Y. Judiciary Law § 478 (McKinney 1996) (Under New York law, it is "unlawful for any natural person to practice or appear as an attorney-at-law or as an attorney and counselor-at-law for a person other than himself in a court … without having first been duly and regularly licensed and admitted to practice law in the courts…."). Indeed, Mr. Phillips would likely be disqualified from representing the ex-shareholders because of conflicts. *See Papanicolaou v. Chase Manhattan Bank, N.A.,* 720 F.Supp. 1080, (S.D.N.Y.1989) (Attorneys who violate "Canon 4 [of the ABA Code of Professional Responsibility], for example, by successively representing opposing sides of an ongoing dispute," are "paradigmatic candidates for disqualification" since "the attorney is in a position to use the confidences gained through prior conferences with a former client.");

15. As noted in the Court's Order, dated April 12, 2002, ex-shareholders may retain lawyers and are free to pursue claims, if any, they may have.

## IV. Conclusion

For the foregoing reasons, Rendall's motion for reconsideration is granted in part and denied in part. The Court's Order, dated April 12, 2002[102], is hereby amended to incorporate additional findings of fact and conclusions of law. Within 10 business days of this date, Plaintiffs' counsel, Messrs. Milberg Weiss Bershad Hynes & Lerach LLP and Messrs. Wechsler Harwood Halebian & Feffer LLP, are directed to cause a copy of this Amended Order of Dismissal to be mailed to those shareholders of Solv–Ex who have written to such counsel or to the Court on or before April 12, 2002. Plaintiffs' counsel is also directed to comply with the remaining notice (publication) provisions of the Order, dated April 12, 2002, within 10 business days of this date.

The Clerk is respectfully requested to close this case, Nos. 96 Civ. 7575 and 96 Civ. 8744.